### GRIFFITH et al. v. GARDNER.
### No. 13048.

United States Court of Appeals
Ninth Circuit.

May 7, 1952.

L. Chas. Gay, San Francisco, Cal., Saul N. Ross, San Bruno, Cal., Nathan Goldwater, Oakland, Cal., for appellants.

James A. Quinby, Lloyd M. Tweedt, Stanley J. Cook and Derby, Sharp, Quinby & Tweedt, all of San Francisco, Cal., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellee Gardner filed a petition in Admiralty pursuant to 46 U.S.C.A. §§ 183–189 seeking exoneration from or limitation of liability for all claims arising by reason of unfortunate occurrences on a voyage of the motor fishboat Vega on March 4, 1950, this voyage being from a point on Half Moon Bay on the coast of California, to sea and return. A monition was issued, notice of the filing was given and the said vessel was surrendered to the custody of the court. These formalities are not in issue on this appeal.

Appellants Mrs. Dalgus L. Griffith and William H. Griffith, Jr., filed a claim for the death of William H. Griffith, Sr., and Paul B. Cowell filed a claim for injuries suffered by him on said voyage.[1] These claimants thereafter joined in an answer to appellee's petition in which they alleged various grounds of unseaworthiness of the Vega and negligence in her maintenance and operation as a basis of their claims. They prayed for denial of appellee's petition and demanded an award for damages and other relief.

In their joint answer appellants averred generally that on March 4, 1950 Cowell and Griffith, Sr., paid the fee exacted by Gardner and in company with 16 others, became passengers on the Vega for a pleasure fishing trip on the adjacent waters of the Pacific Ocean; that the vessel pro-

1. No other claims for damages were filed.

ceeded to sea, and after the passengers had fished for a time, at about 2:30 p. m. on said day, the vessel started the return trip to port; that the sea was rough, and when the vessel was within a few hundred feet from shore it encountered and proceeded through heavy seas and swells which struck and broke over it washing William H. Griffith, Sr. overboard and causing his death by drowning, and throwing Cowell against the side of the Vega, inflicting upon him painful, serious and permanent injuries.

The gravamen of the charge is that the death of Griffith and the injuries to Cowell proximately resulted from the negligence and carelessness of the owners and operators of the Vega and from unseaworthiness of the vessel; that the vessel was unseaworthy and unsuitable for the carriage of passengers on the waters traversed, and not sufficiently officered, manned and equipped for the fishing voyage. Also that the vessel was lacking in stability and of insufficient depth; that her crew was inadequate, insufficient and incompetent; that she was overloaded and overcrowded with passengers; that she was not properly equipped with hand-rails, life-lines, leeboards, and life jackets and life preservers were inadequate and inaccessible; that the compass and its mountings were improper, inadequate and insufficient, and generally that the vessel and her equipment "were insufficient in other respects" and she was improperly, negligently and carelessly handled, navigated and operated.

At the argument in this court appellants' counsel continued to assert reliance on negligence as a basis for recovery, but stated that his principal reliance was on the charge of unseaworthiness of the Vega.

The main contention of appellee is that the death and injury complained of arose from and were the result of a sudden, unpredictable peril of the sea which was neither caused nor contributed to by any unseaworthiness of the Vega nor by any negligence of appellee or his servants.

Depositions were not used, the entire case resting on conflicting oral statements of witnesses as to what condition or conditions actually caused the accident. In this setting the trial judge had to weigh the testimony and determine from the appearance and demeanor of the witnesses whether the stories they told portrayed the true facts concerning all matters in dispute. Appraising the credibility of these witnesses and the weight to give their stories was his function. We would not be justified in rejecting his findings on issues of fact unless, in light of the record, they failed to set forth a sufficiently clear picture of the fact situation they purported to cover for an appellate court to understand the basis for the court's conclusions of law and decree. It is claimed that the findings in this case are not true findings on relevant facts shown by the evidence but are, in effect, but an expression of the ultimate conclusions of the judge as to the net effect of the evidence upon his mind.

Appellants' position is that the facts adduced in evidence clearly show and compel the conclusion that the Vega was unseaworthy in the following particulars: She had no hand-rail or hand-holds for the safety of passengers; her life jackets were inaccessible and a life ring was absent; her compass was inadequate; she was overcrowded and negligently handled; lack of government regulations on boats of this character does not excuse failure "to take necessary precautions" or provide "a sufficient crew."

Appellants also complain that the lower court disregarded deficiencies in the vessel shown by the evidence and refused to make findings on specific fact issues tendered by them. A contention is that these issues required specific findings on each of such matters as the height of the gunwale, the condition of the wind and seas, structure of the vessel, absence of a rail or hand-holds, necessity for shelter, over-crowding, defects in the compass, negligent taking of the vessel into breakers, supervision of passengers and the matter of donning of life jackets. As to this point it is urged that the court's findings avoid the requirements of Admiralty Rule 46½, 28 U.S.C. A. in that they do not "find the facts specially * * *." Cases are cited to the effect that if it appears in the record that specific findings have not been made on all

points claimed to have been in issue, the appellate court will review the evidence on such points. In sum, the complaint is that the lower court only made "general findings" which fall short of the specificity required under the cited Rule.

■ The rule is plain that the decision of the trial court in admiralty cases upon controverted questions of fact will not be disturbed by the appellate court unless it is clearly against the weight of the entire body of evidence. The phrase "findings of fact" may, and in this case we think does, reflect the ultimate judgment of the court on a mass of details involving not merely trustworthiness of witnesses but other appropriate inferences that were drawn from living testimony which elude proof in a cold appellate record. A finding of fact depends on the nature of the materials on which the finding is based and the expression itself may be a summary characterization of complicated factors of varying significance for judgment. Thus, a conclusion by way of reasonable inference from the evidence, is a "finding of fact."

■ The lower court heard the testimony of persons who were aboard the boat at the time of the accident, also "expert testimony" from other witnesses. In addition it was aided in its overall appraisal of the testimony by pictures, charts and other exhibits. From this body of evidence and testimony, all of which dealt directly with the charges of unseaworthiness and negligence, the court reached its conclusion that these charges were not sustained. It entered findings of fact and conclusions of law favorable to appellee and in its final decree denied appellants' claims on the merits, exempted and discharged appellee from claims or liability for loss, death, damage or injury arising from or in connection with the voyage of the Vega here in issue, ordered return of money deposited by appellee as a surrender of voyage earnings, and directed that appellee be given title and possession of the Vega, previously in the hands of a court-appointed Trustee. Costs were allowed.

From an inspection of the entire record we conclude that the findings are not to be condemned because they failed to cover in meticulous detail each and all of the evidentiary facts relied on by appellants. In this view we think they must be regarded as sufficiently explicit to sustain the conclusions of law and the decree. They are not based on evidence which rests upon inherent improbabilities which stamp them as clearly erroneous. See Rogers v. Pacific-Atlantic S.S. Co., 9 Cir., 170 F.2d 30, 32.

The court found that the Vega was in charge of a competent and licensed operator[2] on the fishing cruise, appellee remaining on shore during the entire trip; that the vessel left Princeton on the fishing trip early in the morning, and during the morning period the weather, sea and visibility were moderate and normal for the season of the year; that shortly after noon, when the return trip began, fog set in and limited visibility to about one-half mile; that while returning to Princeton on a general northerly course, and at a point at least one-half mile from shore off the vicinity of Half Moon Bay village, the Vega suddenly encountered a series of unusual and unpredictable high waves moving in from the West, the first and second of which washed William H. Griffith, Sr. overboard and threw claimant Cowell against the bulwarks, causing him to suffer severe injuries; that life preservers were immediately thrown overboard in an effort to assist Mr. Griffith but this effort apparently failed since his body has never been recovered and he must be presumed to have drowned; that under prevailing wave conditions, it was impossible to turn the Vega and go to the assistance of Mr. Griffith; that Adams (the operator of the

2. The court found that the Vega was a converted ex-navy L.C.V.P. of 11.02 gross tons of 33.4 feet registered length, 10.3 feet registered breadth and with a registered depth of 4.7 feet; that the vessel was used by appellee in the business of taking out paying passengers to fish for pleasure in the Pacific Ocean on round trip excursions from Princeton, a town on the California coast near Half Moon Bay.

boat) turned the vessel to the left, maneuvered her through the breaking swells, and brought her and the remaining passengers safely to Princeton.

■ Further findings are that prior to and at the start of the voyage appellee used due diligence to make the Vega in all respects seaworthy and properly and efficiently officered, manned and equipped, and at all times concerned the Vega was in all respects seaworthy and properly and efficiently officered, manned and equipped for the business and voyage in which she was then engaged; that the death of Griffith and the injuries of Cowell were caused solely by unusual waves which could not have been anticipated nor guarded against by appellee or Adams; that neither the death of Griffith nor the injuries of Cowell were due in whole or in part to any unseaworthiness or inadequacy of the hull, engine, gear or equipment of the Vega nor to any negligence of appellee or his employees, and neither appellee nor Adams was in any way negligent in connection with the operation or maintenance of the Vega on the voyage here involved.

The record reflects conflicts on fact issues which had to be resolved by the trial judge. From the testimony and the exhibits we cannot say that he erred in his findings on the issues of negligence and unseaworthiness or that these findings resulted in such an injustice to appellants as to require reversal of the judgment. It is therefore affirmed.