[S.F. No. 24865. Apr. 18, 1988.]

McCLATCHY NEWSPAPERS et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
1983-1984 GRAND JURY FOR FRESNO COUNTY et al., Real
Parties in Interest.

CAPITAL CITIES COMMUNICATIONS, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
1983-1984 GRAND JURY FOR FRESNO COUNTY et al., Real
Parties in Interest.

1983-1984 GRAND JURY FOR FRESNO COUNTY et al.,
Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
JOHN W. RUST et al., Real Parties in Interest.

1164

**COUNSEL**

Fullerton, Lang, Richert & Patch, Val. W. Saldana, Charles M. Barrett, Michael J. Margosian and Gerald Lee Tahajian for Petitioners McClatchy Newspaper and Capital Cities Communications, Inc.

Edward W. Hunt, District Attorney, Gerald M. Davidson and John F. Duffy, Deputy District Attorneys, for Petitioners and Real Parties in Interest 1983-1984 Grand Jury for Fresno County.

Michael G. Woods, James P. Wagoner and McCormick, Barstow, Sheppard, Wayte & Carruth for Respondent.

Elia & Sciandra, Salvatore Sciandra, Forrest & Behrens and Jerome M. Behrens for Real Parties in Interest John W. Rust and unnamed county employee.

Peter E. Tracy and Tracy & Maillet as Amici Curiae on behalf of Real Party in Interest 1983-1984 Grand Jury for Fresno County.

## OPINION

**KAUFMAN, J.**—Thirteen years ago, we concluded that "in this state superior courts are empowered to exercise a limited review of a proposed grand jury report to ensure that the report does not exceed the grand jury's lawful authority" and that "if a proposed grand jury report exceeds established legal limits, the superior court which convenes the grand jury and which is responsible for its supervision may properly refuse to file the report." (*People* v. *Superior Court* (1973 Grand Jury) (1975) 13 Cal.3d 430, 433 [119 Cal.Rptr. 193, 531 P.2d 761] (hereafter cited as *1973 Grand Jury*).)

■ In this proceeding we are called upon to decide whether a proposed grand jury report "exceeds established legal limits" when it announces the grand jury's intention to disclose raw evidentiary materials gathered during a secret watchdog investigation, including transcripts of testimony, summaries and analyses of testimony, and documentary exhibits. We shall hold that such disclosure would be fundamentally inconsistent with governing legislation setting out the parameters of proper grand jury reporting and providing for the secrecy of grand jury proceedings which is central to the effective functioning of the grand jury system in California. Accordingly, we conclude that the superior court in this instance acted properly in striking that portion of the proposed report announcing the intended disclosure and in sealing the evidentiary materials involved.

### I

The Fresno County Grand Jury for 1983-1984 conducted a six-month investigation of alleged irregularities in the county's award of a $1.37 million computer service contract to Systems and Computer Technology Corporation (hereafter SCT). Assisted by the district attorney's office, the grand jury questioned 62 witnesses and collected thousands of pages of testimonial and documentary evidence. The record indicates an advising deputy district attorney made the grand jury aware of the possibility of its returning indictments against persons investigated in the SCT inquiry, and the witnesses were cautioned that their testimony could be used against them.[1] In the end, however, no indictments were weighed or returned.

After the grand jury completed the SCT investigation, the district attorney's office submitted to the grand jury a proposed final report of findings

---

[1] In a declaration filed in the Court of Appeal, the advising district attorney referred to an attached exhibit setting out the admonishment he delivered to several witnesses. The exhibit appears to be a passage drawn from a grand jury procedures manual utilized by the district attorney's office. The passage states that the admonishment should be delivered "[i]f the investigation of the matter before the Grand Jury may result in a criminal indictment against a witness . . . ."

and recommendations which the grand jury considered but declined to adopt. The grand jury then drafted and adopted its own proposed final report; the grand jury's version made no provision for disclosing raw evidentiary materials. On the day after the report's adoption, the district attorney addressed the grand jury, urging it to disclose much of the evidence and internal deliberative materials from the SCT investigation. After the district attorney's presentation, the grand jury adopted a new section "G" of the proposed report, providing for the disclosure the district attorney sought.

Section G of the proposed report was entitled "Public Records" and read as follows: "The Grand Jury will make public the following records and documents which the Grand Jury believes are relevant to the matters referred to in this report and to support the recommendations herein: 1. District Attorney's report to the Grand Jury[.] 2. The transcripts of the hearings before the Grand Jury[.] 3. Pertinent interviews conducted by the District Attorney which were made available to the Grand Jury[.] 4. Documents relevant to the matters discussed in the Grand Jury report and the District Attorney report." The grand jury then submitted its proposed final report of findings and recommendations in the SCT inquiry to the presiding judge of the Fresno County Superior Court.

After reviewing the grand jury's proposed report, the superior court found section G to be in violation of Penal Code sections 939.1 and 939.9.[2] (All further statutory references are to the Penal Code unless otherwise indicated.) The court ordered section G stricken from the report and ordered the named items "sealed, marked 'confidential' and held in safe keeping [*sic*] by the County Clerk's Office until further order of Court."[3]

---

[2] Penal Code section 939.1 reads: "The grand jury acting through its foreman and the attorney general or the district attorney may make a joint written request for public sessions of the grand jury. The request shall be filed with the superior court. If the court, or the judge thereof, finds that the subject matter of the investigation affects the general public welfare, involving the alleged corruption, misfeasance, or malfeasance in office or dereliction of duty of public officials or employees or of any person allegedly acting in conjunction or conspiracy with such officials or employees in such alleged acts, the court or judge may make an order directing the grand jury to conduct its investigation in a session or sessions open to the public. The order shall state the finding of the court. The grand jury shall comply with the order. [¶] The conduct of such investigation and the examination of witnesses shall be by the members of the grand jury and the district attorney. [¶] The deliberation of the grand jury and its voting upon such investigation shall be in private session. The grand jury may find indictments based wholly or partially upon the evidence introduced at such public session."

Penal Code section 939.9 reads: "A grand jury shall make no report, declaration, or recommendation on any matter except on the basis of its own investigation of the matter made by such grand jury. A grand jury shall not adopt as its own the recommendation of another grand jury unless the grand jury adopting such recommendation does so after its own investigation of the matter as to which the recommendation is made, as required by this section."

[3] In a declaration filed in the Court of Appeal, the presiding judge of the superior court stated his decision was strictly limited to the question of whether *the grand jury* had power to

The superior court's order was challenged in three petitions for writ of mandate or prohibition separately filed in the Court of Appeal and later consolidated for hearing and decision. One petition, No. F004569, was filed by McClatchy Newspapers (hereafter McClatchy), doing business as The Fresno Bee and KMJ-Radio; other petitioners joining McClatchy included Charles Milos (a newspaper reporter employed by McClatchy), KMPH-TV and KSEE-TV, KFIG-Radio (AM and FM), and United Press International. The second petition, No. F004577, was jointly brought by Capital Cities Communications, Inc., doing business as KFSN-TV (ABC-TV's Fresno affiliate), and Jeff Lewis, one of its investigative news reporters. The third petition, No. F004612, was filed by the grand jury itself, joined by the Fresno County District Attorney. In addition, the court permitted two witnesses who had testified before the grand jury to intervene in support of the court's order: an unnamed Fresno County employee (hereafter referred to as Doe), and John Rust, an SCT executive who was granted immunity from criminal prosecution for his testimony before the grand jury.

Petitioners contend: (1) the court exceeded its jurisdiction in striking section G and sealing the named evidentiary materials; (2) the court's order was unenforceably vague and overbroad; and (3) the court's action deprived them of certain liberty and property rights without due process of law and in violation of a claimed constitutional right to public scrutiny of governmental affairs. Both intervenors argue that the grand jury lacked authority to disclose evidence received during its secret proceedings and that the court's order was thus proper in all respects.

The Court of Appeal ordered the issuance of a writ of mandate directing the superior court to release the section G materials it had sealed. Citing our decision in *1973 Grand Jury, supra,* 13 Cal.3d 430, the court concluded that "only when the grand jury report goes beyond some *explicit or otherwise unmistakably clear* statutory limitation on the jury's power to report does the superior court have the right to refuse to file" a proposed grand jury report. (Original italics.) The court considered sections 939.1 and 939.9 and other statutory provisions advanced by intervenors Doe and Rust but concluded the Legislature had not clearly limited the grand jury's power to disclose its evidence.

Because of the statewide importance of the question presented we granted petitions for hearing by Doe and Rust. Amicus curiae California Grand

disclose the evidence as it proposed, not whether some other entity might be authorized to do so. (Cf. *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 122 [130 Cal.Rptr. 257, 550 P.2d 161] [rule proscribing grand juror disclosure of evidence inapplicable to district attorney].) The ambit of our review is similarly limited.

Jurors Association was permitted to appear on behalf of petitioner and real party in interest, the 1983-1984 Fresno County Grand Jury.

## II

A brief review of the nature and purpose of the grand jury report will help bring the issue presented into proper focus.

■ The California grand jury has three basic functions: to weigh criminal charges and determine whether indictments should be returned (§ 917); to weigh allegations of misconduct against public officials and determine whether to present formal accusations requesting their removal from office (§ 922; see Gov. Code, § 3060 et seq.); and to act as the public's "watchdog" by investigating and reporting upon the affairs of local government (e.g., §§ 919, 925 et seq.). Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California. (Mar, *The California Grand Jury; Vestige of Aristocracy* (1970) 1 Pacific L.J. 36, 59 [estimating 85 percent of average grand jury's time spent investigating county agencies]; Note, *Some Aspects of the California Grand Jury System* (1956) 8 Stan. L.Rev. 631, 648 [estimating 83 percent of California grand jury proceedings spent in watchdog role].)[4] As we noted in *1973 Grand Jury*, "In California, unlike some other American jurisdictions, the grand jury's role as a vigilant 'watchdog' over the operations of a variety of local governmental activities has a long and well respected heritage." (*1973 Grand Jury, supra*, 13 Cal.3d 430, 436, fn. omitted.)

In the SCT investigation in this case, the grand jury purported to be fulfilling its general responsibility to "investigate and report on the operations, accounts, and records of the officers, departments, or functions of the county . . . ." (§ 925.) However, the SCT proceeding might also appropriately be categorized as one under section 919, subdivision (c), which states: "The grand jury shall inquire into the willful or corrupt misconduct in office of public officers of every description within the county." The grand jury is also empowered generally to investigate and report upon, among other things, housing (§ 914.1), imprisonment of unindicted persons (§ 919, subd. (a)), prison conditions (§ 919, subd. (b)), certain land transfers (§ 920), cities and joint powers agencies (§ 925a), salaries of county officials (§ 927), and the administrative needs of county offices (§ 928).

■ The reporting function of the grand jury is central to its effective operation in the public interest. Grand juries have issued reports on the

---

[4] In some counties, the watchdog and indictment functions may be performed by separate grand jury panels. (See §§ 904.5-904.9; Petersen, *The California Grand Jury System: A Review And Suggestions For Reform* (1974) 5 Pacific L.J. 1, 6-8.) We are not informed that Fresno County maintained separate panels at the time of the instant proceeding.

conduct of public officials and other matters pertaining to local governance for hundreds of years. (See Comment (1976) 64 Cal.L.Rev. 297, 301, citing 1 Pollack & Maitland, The History of English Law (2d ed. 1898) p. 152.) The modern final report, containing the grand jury's findings and recommendations on the subjects of its investigations (see § 933, subd. (a)), is the normal end product of the grand jury's activity in the performance of its watchdog function and is "the only formal means by which the grand jury can hope to effectuate its recommendations . . . ." (Note, *Some Aspects of the California Grand Jury System, supra,* 8 Stan.L.Rev. at p. 651.)

However, the grand jury's power to issue reports is not without limits. We discussed some of those limits and the superior court's authority to enforce them in our *1973 Grand Jury* decision, *supra,* 13 Cal.3d 430.

In that case a county district attorney sought a writ prohibiting the superior court from refusing to file any grand jury report submitted for its review. Relying on the absence of any statute explicitly conferring authority on the superior court to restrain unlawful grand jury reporting, the district attorney contended the superior court must file every report submitted by a grand jury, even when the grand jury has violated applicable legal standards. We rejected the contention, holding the superior court *is* vested with limited authority to refuse to file improper grand jury reports.

In an opinion authored by Justice Tobriner, we concluded the grand jury is fundamentally a judicial entity, " 'an instrumentality of the courts of this state . . . .' (*In re Shuler* (1930) 210 Cal. 377, 405 [292 P. 481] . . . .)" (*1973 Grand Jury, supra,* 13 Cal.3d 430, 438; see *In re Gannon* (1886) 69 Cal. 541, 543 [11 P. 240]; *Irwin* v. *Murphy* (1933) 129 Cal.App. 713, 716 [19 P.2d 292].) We determined the basic judicial nature of the grand jury was manifest throughout the various Penal Code provisions defining and regulating the grand jury's operation (*1973 Grand Jury, supra,* 13 Cal.3d at p. 438, fn. 8) and had been repeatedly confirmed in decisions of this court (see, e.g., *Ex parte Sternes* (1889) 82 Cal. 245, 247 [23 P. 38]; *McFarland* v. *Superior Court* (1948) 88 Cal.App.2d 153, 160 [198 P.2d 318]).

In *1973 Grand Jury,* supra, 13 Cal.3d 430, we did acknowledge that measures of independence and autonomy are necessary for the grand jury's effective function: " 'In our system of government, a grand jury is the only agency free from possible political or official bias that has an opportunity to see . . . the operation of government . . . on any broad basis.' " (*1973 Grand Jury, supra,* 13 Cal.3d at p. 437, quoting *Monroe* v. *Garrett* (1971) 17 Cal.App.3d 280, 284 [94 Cal.Rptr. 531].) In this connection we further remarked: "The superior court must respect the grand jury's independence of judgment; the court has no authority either to impose its own views on

the grand jury or to suppress a report simply because it considers it ill-advised, insufficiently documented or even libelous." (*1973 Grand Jury, supra,* 13 Cal.3d at p. 439.)

However, we also stated: "The numerous statutory provisions . . . , which grant the grand jury authority to investigate and report on numerous facets of local government, also limit the grand jury's investigation and reporting authority to the specifically enumerated fields. As the Court of Appeal noted in *Board of Trustees* v. *Leach* (1968) 258 Cal.App.2d 281, 285 [65 Cal.Rptr. 588] . . . : 'Although [the grand jury's] powers are broad, they are carefully defined and limited by statute, and the grand jury has no inherent investigatory powers beyond those granted by the Legislature.'" (*1973 Grand Jury, supra,* 13 Cal.3d at p. 437.)

Because of the fundamentally judicial nature of the grand jury and the restrictive enumeration of its powers in the statutes, we concluded that the superior court must have *some* power to restrain a report or any other act by the grand jury which exceeds its proper authority. "Since the grand jury is an arm of the court and part of the judicial system, the court, subject to appellate review, may in some instances, limited though they may be, refuse to file a proposed report. It would be anomalous for a court of law to participate in the law's violation by filing a report that was itself the statute's violation." (*1973 Grand Jury, supra,* 13 Cal.3d at p. 442.)

While generally recognizing the superior court's power to prohibit and restrain unlawful grand jury reporting, we were not called upon in *1973 Grand Jury* to consider any particular instance of grand jury excess. We did posit two hypothetical examples of clearly unlawful grand jury action: the grand jury's use of anything other than its own investigation as the basis for a report (§ 939.9; see *ante,* fn. 2) and the investigation of matters occurring outside the grand jury's geographical jurisdiction. But we stated: "We have pointed out two situations which inexorably call for such exercise of the superior court's power [to refuse to file a report]; they are enough to refute the district attorney's extreme position. Although other situations may support a superior court's refusal to file a grand jury report, we do not consider, or pass upon them at this time." (*1973 Grand Jury, supra,* 13 Cal.3d at p. 442.)

### III

In *1973 Grand Jury* we considered common law principles pertaining to the grand jury to facilitate our analysis of applicable statutes. (*Id.,* at p. 440, fn. 11, citing *Fitts* v. *Superior Court* (1936) 6 Cal.2d 230, 240-241 [57 P.2d

510].) A similar approach seems appropriate here as we consider the significance of secrecy to the grand jury's effective operation.

The secrecy of all grand jury proceedings is "deeply rooted in our traditions . . . ." (*Illinois* v. *Abbott & Associates, Inc.* (1983) 460 U.S. 557, 572 [75 L.Ed.2d 281, 293, 103 S.Ct. 1356].) This tradition of secrecy has been traced to the oath taken by grand jurors in the late 12th century, by which they swore to " 'do this faithfully, that they will aggrieve no one through enmity nor show deference to any one through love, and that they will conceal those things which they have heard.' " (Kennedy & Briggs, *Historical and Legal Aspects of the California Grand Jury System* (1955) 43 Cal.L.Rev. 251, 255.)

Although the original purpose of the secrecy requirement seems to have been to prevent the escape of offenders (*ibid.*), another important reason for maintaining the secrecy of grand jury proceedings soon emerged, i.e., "[s]ecrecy proved to be an effective means of reducing the influence of the King and guaranteeing the impartiality of the grand jury . . . ." (Brown, *The Witness And Grand Jury Secrecy* (1983) 11 Am.J.Crim.L. 169, 170; see also Pickholz & Pickholz, *Grand Jury Secrecy and the Administrative Agency: Balancing Effective Prosecution of White Collar Crime Against Traditional Safeguards* (1979) 36 Wash. & Lee L.Rev. 1027, 1028-1031.) This use of secrecy to protect grand jurors from the abuses of the Crown dates from the 17th century; for the most part, grand jury proceedings since that time have been closed to the public and records of such proceedings have been kept from the public eye. (*Douglas Oil Co.* v. *Petrol Stops Northwest* (1979) 441 U.S. 211, 218-219, fn. 9 [60 L.Ed.2d 156, 164-165, 99 S.Ct. 1667]; see also Caulkins, *Grand Jury Secrecy* (1965) 63 Mich.L.Rev. 455, 456-458.) Most importantly, "The right and duty of the grand jurors to conduct their investigations, deliberations and voting in secret, which were won and established in England, are substantially the same for the modern California grand jurors." (Kennedy & Briggs, *Historical and Legal Aspects of the California Grand Jury System, supra,* 43 Cal.L.Rev. 251, 265.)

■ That the Legislature intended to incorporate this well-established heritage of secrecy into the present grand jury system is plainly and amply shown in the governing provisions of the Penal Code. For example, section 915 states: "When the grand jury has been impaneled, sworn, and charged, it shall retire to a *private room,* and inquire into the offenses cognizable by it." (Italics added.) The parameters of this private room are explained in section 939: "No person other than [the supervising judge, the district attorney or county counsel, specially employed counsel or investigators, interpreters, stenographic reporters, and the public if permitted by the court under section 939.1] is permitted to be present during the session of the

grand jury except the members and witnesses actually under examination." In addition, willful disclosure by a grand juror or the interpreter for a disabled grand juror of any evidence adduced before the grand jury is a misdemeanor. (§ 924.1.) Misdemeanor liability is also imposed upon any person who records a grand jury's deliberations without its consent. (§ 891.) Grand jurors are generally prohibited from disclosing information about their deliberations and discussions (§ 924.2), although no misdemeanor liability attends such disclosure. (See, generally, *Ex Parte Sontag* (1884) 64 Cal. 525, 527-528 [2 P. 402].)

The oath administered to the grand jurors in this case, as then prescribed under section 911, informed them of their duty to maintain the secrecy of the proceedings. The oath read in pertinent part: "I will keep my own counsel, and that of my fellow grand jurors and of the government, and will not, except when required in the due course of judicial proceedings or authorized by statute, disclose the testimony of any witness examined before the grand jury, nor anything which I or any other grand juror may have said, nor the manner in which I or any other grand juror may have voted on any matter before the grand jury." (§ 911, as amended by Stats. 1975, ch. 298, § 1, p. 743.)[5] An amended version of the oath effectuated during the tenure of the grand jury in this case clarified that grand jurors were prohibited from disclosing "any *evidence* brought before the grand jury" (italics added), not just the testimony of witnesses. (Stats. 1983, ch. 111, § 4, p. 280.)

A number of interests are served by "the strong historic policy of preserving grand jury secrecy" (*United States* v. *Sells Engineering, Inc.* (1983) 463 U.S. 418, 428 [77 L.Ed.2d 743, 755, 103 S.Ct. 3133]). As described by the United States Supreme Court, these are: "First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but

---

[5] Besides the oath, the informational handbook distributed to members of the Fresno County Grand Jury in the present case also informed the jurors about the conditions of secrecy they were required to maintain. For example, one passage read: "Because of the confidential nature of a Grand Jury's work, much of it must be conducted in closed session. Members of a Grand Jury are sworn to secrecy to assure that all complaints will be handled in an entirely confidential manner. No one may be present during the sessions of a Grand Jury except those specified by law (Penal Code section 939), and the minutes of its meetings may not be inspected by anyone, nor can its records be subpoenaed."

exonerated by the grand jury will not be held up to public ridicule." (*Douglas Oil Co.* v. *Petrol Stops Northwest, supra,* 441 U.S. 211, 219 [60 L.Ed.2d 156, 165], fn. omitted; see *United States* v. *Rose* (3d Cir. 1954) 215 F.2d 617, 628-629.)[6]

■ In this connection, it can hardly be disputed that the encouragement of candid testimony and the protection of witnesses and their reputations are best achieved when secrecy is maintained even after the conclusion of a grand jury investigation. "The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." (*United States* v. *Procter & Gamble* (1958) 356 U.S. 677, 682 [2 L.Ed.2d 1077, 1082, 78 S.Ct. 983]; see *Illinois* v. *Abbott & Associates, Inc., supra,* 460 U.S. 557, 566, fn. 11 [75 L.Ed.2d 281, 289].)

The importance of secrecy is well established in the context of the grand jury's criminal indictment function. By the same token, when the grand jury conducts a watchdog investigation of local government operations as in the instant case, secrecy appears equally vital. Compared with indictment proceedings, the efficacy and credibility of watchdog investigations no less require that witnesses testify without fear of reproach by their peers or their superiors. Though the watchdog investigation and report serve a different social purpose than the criminal indictment, eliciting candid testimony is obviously critical to both functions of the grand jury.

Significantly, the separate and distinct functions of watchdog and indictment grand juries are sometimes intermingled, in the sense that watchdog inquiries into alleged corruption may involve the weighing of possible criminal indictments against county officials and others being investigated. In the instant watchdog proceeding, for example, the grand jury observed the advising district attorney cautioning witnesses that their testimony might be used against them; in this way the grand jury was made aware of the possibility of weighing criminal charges against those witnesses. (See fn. 14, *post*.) Whether or not a watchdog grand jury actually undertakes the weighing of indictments, secrecy "provides the proper atmosphere in which to generate uninhibited testimony from county employees who might otherwise be intimidated by political and employment considerations." (Petersen,

---

[6] Wigmore categorizes the various reasons for grand jury secrecy slightly differently: (1) grand jurors are protected from the possible adverse consequences of disclosing their deliberations and votes; (2) complainants and witnesses are protected from the possible adverse consequences of disclosing their testimony; (3) the guilty accused are given no incentive to flee or to tamper with witnesses or grand jurors; and (4) the innocent accused are protected from the harm to their reputations which might result from disclosure. (8 Wigmore, Evidence (McNaughton ed. 1961) § 2360, pp. 734-735.)

*The California Grand Jury System: A Review And Suggestions For Reform, supra,* 5 Pacific L.J. 1, 11; see also Note, *The Grand Jury Report as an Infringement of Private Rights* (1972) 23 Hastings L.J. 561, 578.)

Secrecy also serves to protect the reputations of those who may be unjustly accused during the course of a watchdog investigation. "Grand jury secrecy . . . is 'as important for the protection of the innocent as for the pursuit of the guilty.' [Citation omitted.]" (*United States* v. *Sells Engineering, Inc., supra,* 463 U.S. 418, 424 [77 L.Ed.2d 743, 753].) In this regard, however, adverse comment by the grand jury in its own report must be carefully distinguished from adverse comment by a witness testifying in the course of a grand jury proceeding.

Whether a grand jury should itself be permitted to criticize an individual in a report has been extensively debated. (See, e.g., Comment, *Legality of the Grand Jury Report* (1954) 52 Mich.L.Rev. 711; Note, *The Grand Jury Report as an Infringement of Private Rights, supra,* 23 Hastings L.J. 561, 572-575; see, generally, Kuh, *The Grand Jury "Presentment": Foul Blow or Fair Play* (1955) 55 Colum.L.Rev. 1103.) In states authorizing some watchdog function for the grand jury, some absolutely forbid the criticizing of unindicted individuals in watchdog reports (see, e.g. *Biglieri* v. *Washoe Cty. Grand Jury Report, Etc.* (1979) 95 Nev. 696 [601 P.2d 703, 705]; *Kelly* v. *Sturgis* (Fla.App. 1984) 453 So.2d 1179, 1182; cf. *In re Elkhart Grand Jury, June 20, 1980* (Ind.App. 1982) 433 N.E.2d 835, 837-838), while others have permitted such criticism in limited circumstances (see, e.g., *Hayslip* v. *State* (1952) 193 Tenn. 643 [249 S.W.2d 882, 884-885]; *Ex Parte Cook* (Ark. 1940) 137 S.W.2d 248, 249).

The New York Court of Appeals wrote eloquently about the vulnerability of unindicted individuals who are criticized in grand jury reports: "In the public mind, accusation by report is indistinguishable from accusation by indictment and subjects those against whom it is directed to the same public condemnation and opprobrium as if they had been indicted. An indictment charges a violation of a known and certain public law and is but the first step in a long process in which the accused may seek vindication through exercise of the right to a public trial, to a jury, to counsel, to confrontation of witnesses against him and, if convicted, to an appeal. A report, on the contrary, based as it is upon the grand jury's own criteria of public or private morals, charges the violation of subjective and unexpressed standards of morality and is the first and last step of the judicial process. It is at once an accusation and a final condemnation, and, emanating from a judicial body occupying a position of respect and importance in the community, its potential for harm is incalculable. A grand jury report—which [as] a judicial document obviously differs radically from newspaper charges of

misconduct—carries the same sense of authoritative condemnation as an indictment does, without, however, according the accused the benefit of the protections accorded to one who is indicted."[7] (*Wood* v. *Hughes* (1961) 9 N.Y.2d 144 [212 N.Y.S.2d 33, 39-40, 173 N.E.2d 21].)

In California it is settled that the grand jury *may* criticize individuals in a watchdog report and that a superior court "has no authority . . . to suppress a report simply because it considers it ill-advised, insufficiently documented, or even libelous." (*1973 Grand Jury, supra,* 13 Cal.3d 430, 439; see *Irwin* v. *Murphy, supra,* 129 Cal.App. 713, 717.) A person wrongfully made the target of adverse comment by a grand jury is not without remedies, however. A grand jury's "comment upon any person or official who has not been indicted . . . shall not be deemed to be privileged" (§ 930), and thus an action for defamation will lie against individual grand jurors for statements made in a grand jury report.[8] Also, section 939.91 permits an investigated individual or a grand jury witness to petition the court to compel the issuance of an exculpatory declaration by the grand jury.[9]

On the other hand, disclosure of adverse comments by *witnesses* appearing in secret before the grand jury presents quite a different problem. Revelation of a county employee's unfavorable opinion of a coworker or supervisor, elicited during an investigation into the operations of county government, could greatly damage the reputation of that coworker or supervisor. In such a case, public inspection of the testimony concerning these individuals can engender a kind of nonjudicial punishment against which persons harmed would lack any real defense or adequate forum for response. In sections 930 and 939.91 the Legislature has provided no relief to persons adversely commented upon by witnesses before the grand jury in the event those comments are disclosed to the public. Instead, as we will discuss, the Legislature in effect has prevented this type of damage to reputation by

---

[7]Under present New York law, watchdog grand jury reports may be filed by the supervising court only after it determines that the report "is not critical of an identified or identifiable person." (Crim. Proc. Law of N.Y., § 190.85, subd. 2 (b); see *Matter of Report of Aug.-Sept. 1983 Grand Jury* (1984) 103 App.Div.2d 176 [479 N.Y.S.2d 226, 229-232].)

[8]Section 930 was held to be constitutional in *Gillett-Harris-Duranceau & Associates* v. *Kemple* (1978) 83 Cal.App.3d 214, 221-223 [147 Cal.Rptr. 616].)

[9]Section 939.91, subdivision (a), provides in pertinent part: "A grand jury which investigates a charge against a person, and as a result thereof cannot find an indictment against such person, shall, at the request of such person and upon the approval of the court which impaneled the grand jury, report or declare that a charge against such person was investigated and that the grand jury could not as a result of the evidence presented find an indictment." Subdivision (b) allows a person "called before the grand jury for a purpose, other than to investigate a charge against such person" to petition for a declaration that the grand jury investigation involved no charge against him or her and that he or she was only a witness in the proceeding.

denying the grand jury any authority to disclose raw evidentiary materials by means of its reports.

 Recognizing the important purposes served by grand jury secrecy, the Legislature has enumerated only three situations in which disclosure of raw evidentiary materials is permitted. First, by court order the testimony of a witness may be disclosed to determine whether it is consistent with testimony given before the court or when relevant to a charge of perjury. (§ 924.2[10]; *Non-Disclosure of Grand Jury Transcript of Testimony,* 53 Ops.Cal.Atty.Gen. 200, 201-202 (1970).) Secondly, section 938.1, subdivision (b), provides that when an indictment is returned, transcripts of testimony taken before the grand jury are to be delivered to the defendant and thereafter filed for public access.[11] (See *Craemer* v. *Superior Court* (1968) 265 Cal.App.2d 216, 226-227 [71 Cal.Rptr. 193] [transcript may be sealed pending criminal trial to avoid prejudicing defendant's right to fair trial but thereafter must be filed].)

And finally, evidentiary materials gathered by one grand jury may be disclosed to a succeeding grand jury. (§ 924.4 (see fn. 12, *post*).) Section 924.4 represents the grand jury's only statutory authority to undertake disclosure of its evidentiary materials on its own initiative. However, as will be seen, the Legislature's express authorization of grand jury disclosure in only this one limited situation is a strong indication the grand jury lacks such authority generally (see discussion, *infra*).

## IV

 There is no *explicit* statutory authority for the grand jury to disclose to the public raw evidentiary materials as part of its final report in a watchdog investigation. Amicus curiae and others seem to suggest, however, the grand jury's power to do so is intrinsic and need not be spelled out explicitly in the statutes. Instead, they urge, it is the superior court which lacks clearly defined authority to refuse to file the proposed report and to

[10] Section 924.2 provides, in relevant part: "Any court may require a grand juror to disclose the testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court, or to disclose the testimony given before the grand jury by any person, upon a charge against such person for perjury in giving his testimony or upon trial therefor."

[11] Section 938.1, subdivision (b), states: "The transcript shall not be open to the public until 10 days after its delivery to the defendant or his attorney. Thereafter the transcript shall be open to the public unless the court orders otherwise on its own motion or on motion of a party pending a determination as to whether all or part of the transcript should be sealed. If the court determines that there is a reasonable likelihood that making all or any part of the transcript public may prejudice a defendant's right to a fair and impartial trial, that part of the transcript shall be sealed until the defendant's trial has been completed."

seal the evidentiary materials the grand jury seeks to disclose. Their position was adopted and enunciated in the opinion of the Court of Appeal: "[O]nly when the grand jury report goes beyond some *explicit or otherwise unmistakably clear* statutory limitation does the superior court have the right to refuse to file the offending portions of the report." (Original italics.)

However, this view of the derivation of the grand jury's power is inconsistent with the *1973 Grand Jury* decision, in which we pointed out that the grand jury's powers are "carefully defined and limited by statute" and therefore that the grand jury acts without authority when its action is not based upon some specific legislative provision. (*1973 Grand Jury, supra,* 13 Cal.3d 430, 437.) "The grand jury can function only as a body under and according to and within the limitation of its legal authority." (*Clinton* v. *Superior Court* (1937) 23 Cal.App.2d 342, 345 [73 P.2d 252].)

Broad though they are, the grand jury's powers are only those which the Legislature has deemed appropriate. Attempts to exercise powers other than those expressly conferred by statute have been consistently rebuffed. (See, e.g., *Allen* v. *Payne* (1934) 1 Cal.2d 607, 608-609 [36 P.2d 614] [no power to hire investigator]; *Board of Trustees* v. *Leach* (1968) 258 Cal.App.2d 281, 285-289 [65 Cal.Rptr. 588] [no authority to investigate personnel records of school district]; *People* v. *Bartlett* (1962) 199 Cal.App.2d 173, 177 [18 Cal.Rptr. 480] [no authority to take judicial notice of public records]; *Co. of Fresno* v. *Roberson, M. & Co.* (1954) 124 Cal.App.2d Supp. 888, 893-894 [269 P.2d 252] [no authority to hire expert]; *People* v. *Brown* (1927) 81 Cal.App. 226, 244-249 [253 P. 735] [no authority to conduct on-scene investigation].) Amicus curiae can point to no express statutory provision authorizing the grand jury to undertake the disclosure attempted in this case—none exists.

■ On the contrary, several statutes governing the grand jury's operation persuasively indicate that the grand jury is not empowered to disclose raw evidentiary materials by means of its watchdog report and that the absence of explicit statutory authority was purposeful on the part of the Legislature. For example, section 939.1 (see fn. 2, *ante*) establishes a specific procedure by which the grand jury must obtain the superior court's approval if it wishes to hold its proceedings in public. A joint request for public sessions must be made to the superior court by the grand jury's foreman and either the district attorney or the Attorney General. The court has discretion to order the proceedings opened to the public if it finds "that the subject matter of the investigation affects the general public welfare, involving the alleged corruption, misfeasance, or malfeasance in office or dereliction of duty of public officials or employees or of any person allegedly acting

in conjunction or conspiracy with such officials or employees in such alleged acts . . . ." (§ 939.1.)

Because the grand jury in the proceeding at bench failed to make any request for public sessions under section 939.1, the presiding judge concluded the grand jury's attempt to make wholesale disclosure of the section G materials constituted an illegal attempt to hold a public session without following the statutorily required procedure. Disclosing evidence received at a closed session is somewhat different from holding a public session and the superior court may have been incorrect to the extent it viewed the grand jury's proposed disclosure as a *direct* violation of section 939.1. However, section 939.1 does support the principles underlying the court's action. First, grand jury secrecy is the rule and openness the exception, permitted only when specifically authorized by statute. Second, while the Legislature has acknowledged the usefulness of public grand jury sessions in certain investigations, authority to open hearings to the public in a given instance has been conferred not on the grand jury but instead has been committed ultimately to the discretion of the superior court. This delegation of supervisory authority, in turn, recognizes and reinforces the court's responsibility to prohibit and restrain grand jury action which goes beyond its statutorily enumerated powers.

■ The superior court's conclusion that the grand jury's attempted disclosure exceeded its authority finds additional support in the statutory provision prescribing the grand jury's reportorial duties. The grand jury is required to file "a final *report* of *its findings and recommendations* that pertain to county government matters . . . ." (§ 933, subd. (a), italics added.) Though section 933 clearly sets out the grand jury's authority to *find, recommend,* and *report,* nothing in that section permits the grand jury to declare in its final report that it will make public the evidentiary materials gathered during its investigation or actually to make such disclosure. Instead, section 933 implicitly calls for the grand jury to distill its conclusions from the evidentiary materials before it by determining the credibility of testimony, drawing inferences, and resolving conflicts—such a process is implicit in the words "its findings." (Cf. *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12] ["findings" refers to statements which "bridge the analytic gap between the raw evidence and ultimate decision"]; *Griffith* v. *Gardner* (9th Cir. 1952) 196 F.2d 698, 701.)

This reasoning also lends support to the superior court's reliance upon section 939.9 (see *ante,* fn. 2), which prohibits the grand jury from making any report except on the basis of its own investigation. For the same reasons that raw evidentiary materials do not legally constitute "findings," mere

disclosure of those materials by the grand jury does not constitute a *report on the basis of* the grand jury's investigation. (Cf. *Hoefer* v. *Town of Brattleboro* (1979) 137 Vt. 434 [407 A.2d 183] [mere recitation of evidence does not constitute a finding]; *Zenith Radio Corp.* v. *Matsushita Elec. Ind. Co.* (E.D.Pa. 1980) 505 F.Supp. 1125, 1144.)

■ The most compelling indication that the Legislature has not authorized disclosure of evidentiary materials to the public in a grand jury report is found in the language and legislative history of section 924.4, which was enacted in 1975 to permit a grand jury to disclose the evidence it has received to a succeeding grand jury.[12] As we have noted *ante,* section 924.4 represents the only clear authority for the grand jury's undertaking disclosure of evidentiary materials on its own initiative.

Section 924.4 was introduced in the Legislature as Senate Bill No. 167, 1975-1976 Regular Session. The Legislative Counsel's Digest entry on that bill stated in material part: "The law presently prohibits any grand jury from disclosing any information or evidence acquired by the grand jury during its investigations . . . . [¶] This bill permits such disclosure to the succeeding grand jury and also makes available to the succeeding grand jury transcripts of any testimony reported during sessions of the grand jury."

If prior to the enactment of section 924.4 a grand jury could not disclose evidentiary materials even to a succeeding grand jury, a fortiori it could not, absent separate and express statutory permission, disclose such materials to the public. And further, if before section 924.4 was enacted in 1975 the grand jury was actually empowered to disclose evidence and other materials as it pleased, the Legislature's grant of specific authority to release such materials to succeeding grand juries would have been unnecessary and the enactment of section 924.4 meaningless. Of course, we strive to assign significance to every statute or part thereof in attempting to divine legislative intent (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]) and we avoid interpretations which would render certain words or passages mere surplusage (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155]).

---

[12] Section 924.4 provides: "Notwithstanding the provisions of Sections 924.1 and 924.2, any grand jury or, if the grand jury is no longer empaneled, the presiding or sole judge of the superior court, may provide the succeeding grand jury with any information or evidence acquired by the grand jury during the course of any investigation conducted by it during its term of service, except any information or evidence which relates to a criminal investigation or which could form part or all of the basis for issuance of an indictment. Transcripts of testimony reported during any session of the grand jury shall be made available to the succeeding grand jury upon its request."

Moreover, section 924.4 is prefaced by the words, "Notwithstanding the provisions of Sections 924.1 and 924.2 . . . ," indicating the Legislature contemplated that the new authorization for disclosure would conflict with the provisions for grand jury secrecy found in sections 924.1 and 924.2. This reasoning undercuts two of the major arguments proffered by amicus curiae and others, namely: (1) that the rules restricting grand juror disclosure of evidence and deliberative communications apply only to grand jurors as individuals and not to the grand jury as a body; and (2) that the requirements of secrecy only apply to pending grand jury proceedings and in no way limit the grand jury's power to disclose evidence and other materials once the proceedings are completed.

Regarding the first of these premises, it is significant that in the same act which created section 924.4, the Legislature also amended the grand juror oath in section 911 to reflect the act's creation of the *new* statutory authorization for grand jury disclosure. (Stats. 1975, ch. 298, § 1, p. 743.)[13] As to the second premise, we observe that, if it were true, section 924.4 would have been unnecessary because it applies by definition to a grand jury which has completed or is about to complete its term of service. Also, the long-standing policy of encouraging full, frank testimony in grand jury investigations would be ill served by a rule requiring secrecy up to the completion of the proceeding but allowing the grand jury immediately afterward to unilaterally disclose all testimonial and documentary evidence collected. The grand jury may, of course, refer in its reports to evidence supporting its conclusions by summarizing or paraphrasing the evidence, so long as the identity of witnesses is not thereby revealed, directly or by implication from content.

Besides the testimonial and documentary evidence it collected, the grand jury also attempted to make public the district attorney's reports on the SCT investigation and various related documents. These reports were apparently prepared pursuant to the district attorney's authority to "appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable by the grand jury . . . ."[14] (§ 935.) No statute

---

[13] At the time the pertinent passage from the oath as set out in section 911 read: "I will keep my own counsel, and that of my fellow grand jurors and of the government, and will not, except when required in the due course of judicial proceedings, disclose the testimony of any witness examined before the grand jury, nor anything which I or any other grand juror may have said, nor the manner in which I or any other grand juror may have voted on any matter before the grand jury." The Legislature amended the exception to the general promise of confidentiality to read: "[E]xcept when required in the due course of judicial proceedings *or authorized by statute*." (Italics added.)

[14] The record suggests the attempted grand jury disclosure in this case was greatly influenced by the district attorney, who may have urged the grand jury to disclose the materials after it appeared the grand jury would not vote to return indictments. A declaration filed in the Court of Appeal by the grand jury's foreperson indicates the grand jury drafted and adopted a version of the final report which contained no reference to, and indicated no intent

or decision permits disclosure of this information or advice when it is given during a secret inquiry. And such information seems intended for use in connection with the grand jury's private deliberations, which themselves must be confidential. (§§ 911, 924.2.)

McClatchy and others also contend the superior court's order in this case was impermissibly vague and overbroad. Not so. The court adequately specified the evidentiary materials subject to its order. And contrary to McClatchy's suggestion, the record does not show the court's order operated to seal otherwise public documents.

### V

Finally, amicus curiae contends the superior court's action restraining the grand jury's attempted disclosure of evidentiary materials violated the public's right to scrutinize governmental affairs as guaranteed in the Government Code and the California Constitution. The contention lacks merit.

■ Amicus argues at length that the California Public Records Act (Gov. Code, § 6250 et seq. (hereafter the Act)) creates a right of public access to governmental information which justifies the grand jury's disclosure in this case. However, the Act exempts from its operation judicial agencies established in article VI of the California Constitution. (Gov. Code, § 6252, subd. (a); see *Pantos* v. *City and County of San Francisco* (1984) 151 Cal.App.3d 258, 262 [198 Cal.Rptr. 489]; *Estate of Hearst* (1977) 67 Cal.App.3d 777, 782 [136 Cal.Rptr. 821].) While the grand jury is nowhere mentioned in article VI, the grand jury's nature as a judicial entity (see *1973 Grand Jury, supra,* 13 Cal.3d 430, 438-439) and the important public interests requiring its institutional secrecy persuade us that the Legislature must have intended the grand jury to be similarly exempted from the Act's provisions. (See Gov. Code, § 6255.)

■ Additionally, amicus curiae seems to argue that grand jury reports are insulated from the superior court's intervention by the constitutional

to disclose, any of the evidentiary materials in section G. The foreperson stated that only after the district attorney was permitted to address the grand jury and proceeded to urge the disclosure of the materials did the grand jury eventually relent and include section G in its final report. And, despite section G's characterization of the materials sought to be disclosed as "relevant to the matters referred to in this report," the foreperson stated that the grand jury never reviewed the materials to determine their relevance, nor did the grand jury deliberate on the matter of relevance, nor did it authorize the district attorney to engage in a determination of the materials' relevance on its behalf.

The district attorney's role in the instant case was no doubt well intentioned. Although the point is somewhat removed from the precise issue before us, we nevertheless take this opportunity to caution against prosecutorial utilization of the watchdog grand jury for extrajudicial purposes. (See *United States* v. *Fisher* (2d Cir. 1972) 455 F.2d 1101, 1105.)

guaranty of free expression. An identical contention was unequivocally rejected in our *1973 Grand Jury* decision, in which Justice Tobriner wrote for the majority: "The dissent's suggestion that the present opinion condones censorship of First Amendment expression ignores several critical points. In the first place, the grand jury is not a private body and its report is not an expression of private citizens' views; rather the grand jury is a governmental body and its official report, carrying the aura of a judicial pronouncement, is authorized only within established legal limits. Second, although the dissent (without authority) suggests otherwise, as discussed above the grand jury has from its inception in Anglo-American jurisprudence always been considered an integral part of the judicial branch—'an instrumentality of the courts.' (*In re Shuler, supra,* 210 Cal. 377, 405.) In applying the established common law rule that a court may prevent one of its instrumentalities from taking action explicitly prohibited by statute, we certainly give no sanction to governmental suppression of protected expression." (*1973 Grand Jury, supra,* 13 Cal.3d 430, 441-442, fn. 14.)

Amicus curiae urges finally that we find the grand jury's authority for freewheeling disclosure in the public's "right to know," assertedly implicit in the California Constitution, article II, section 1: "All political power is inherent in the people. Government is instituted for their protection, security, and benefit, and they have the right to alter or reform it when the public good may require." The point is not meritorious. The people, acting through their elected representatives or through exercise of the initiative power, may authorize the disclosure attempted here, but they have not done so to date, presumably for the policy reasons we have discussed. Enforcing existing legal restraints on the operations of the grand jury is fully consistent with the provision of the state Constitution recognizing that in our democratic system all political power derives from the people.

## VI

The secrecy of grand jury proceedings, carefully nurtured and protected during that institution's long history, continues to serve important interests at the present time and in the particular context of watchdog investigations.

 In view of the required secrecy of grand jury proceedings, the absence of explicit statutory authority for the grand jury to disclose raw evidentiary materials to the public, and the superior court's power to ensure that the grand jury stays within the bounds of its lawful authority, we conclude the superior court in this case acted properly in striking section G of the grand jury's proposed report and in sealing the evidentiary materials the grand jury improperly sought to disclose.

The petitions for writ of mandate or prohibition are denied. All alternative writs are hereby discharged.

Lucas, C. J., Broussard, J., Panelli, J., Arguelles, J., and Eagleson, J., concurred.

**MOSK, J.**—I dissent.

One would hope that courts, like individuals, would learn from prior misdirection. Yet here, in an unmistakable exercise of *déjà vu,* a majority of this court approve of censorship precisely as a four-to-three majority erred more than a decade ago in *People* v. *Superior Court* (*1973 Grand Jury*) (1975) 13 Cal.3d 430 [119 Cal.Rptr. 193, 531 P.2d 761]. My dissent in that case, joined by two colleagues, could be repeated almost verbatim in the instant matter.

The very underpinning of the majority is faulty, as it relies on "the fundamentally judicial nature of the grand jury" (*ante* p. 1172). The fact is, however, that we are here concerned with the grand jury's *investigative* activity and its report of the result. Strange indeed is the notion that investigation is a judicial function.

However well intentioned the superior court judge may have been, the inescapable conclusion is that in excising part of the grand jury report he was committing censorship. As we should have learned from the lessons of history, the road to censorship is often paved with good intentions.

Penal Code section 933 provides that the grand jury "shall submit to the presiding judge of the superior court a final report," but nowhere in that section, or any other provision, is authority given to the judge to reject the report in whole or in part. Here the grand jury fulfilled its statutory duty by filing a report. The judge was required to accept the report. In purporting to excise part of the material submitted, he was in effect improperly expanding judicial jurisdiction by diminishing the jurisdiction of the grand jury.

I find it ironic that the majority, as in the 1973 grand jury case, cite *Monroe* v. *Garrett* (1971) 17 Cal.App.3d 280 [94 Cal.Rptr. 531]. They obviously overlook the impact of that opinion, which, at page 284, declares: "The *public* may, of course, ultimately conclude that the jury's fears were exaggerated or that its proposed solutions are unwise. But the debate which reports . . . provoke [can] lead only to a better understanding of public governmental problems." (Italics added.) The *public,* not a judge, is to draw conclusions from the grand jury report. The *public* is to be provoked into

debate; the judge is not to prevent debate by suppressing all or part of the report.

The majority emphasize the secrecy of grand jury proceedings. I have no quarrel with that concept. However, my colleagues confuse the internal *proceedings* of the grand jury, which are properly secret, with the grand jury *report* to the court, which by statute is intended to be made public. As the Court of Appeal properly noted, the grand jury's reporting power is coextensive with its investigative power "in order that the people's right to know about the affairs of their government not be thwarted." This principle has prevailed for more than a half century: in *Irwin* v. *Murphy* (1933) 129 Cal.App. 713, 717 [19 P.2d 292], the court held "As a matter of routine, if nothing further, the power to investigate includes as an integral part thereof the right and duty to report the result of such investigation."

It is true that on occasion a grand jury may delve into matters that are inappropriate to its functions. But as I pointed out in my dissent in *People* v. *Superior Court* (*1973 Grand Jury*), *supra,* 13 Cal.3d at pages 445-446, "if we assume arguendo that the body proposed to report on subjects outside its ken, such a report might reflect upon its source, yet the irrelevance or impropriety of the official document does not justify its suppression. There are traditional and statutory boundaries to grand jury activities. Penal Code section 939.9 is cited as an example. But if an irresponsible grand jury elects to violate that or any other statutory inhibition, it may suffer penalties the law provides, if any, but it cannot be restrained from so acting.

"A legislature may not enact an unconstitutional statute; such an act is wholly beyond its authority and jurisdiction. Yet no court would attempt to prevent the legislative body, by injunction or other order, from proceeding as it sees fit. As an independent public body it has the right to proceed, even in error. A court cannot enjoin the publication of a libel, prevent the erroneous exercise of discretion by a public official, or prohibit the commission of a crime. By parity of reasoning, a court cannot prevent a grand jury from expressing views on subjects the court believes improper, whether by direct order or by suppression of a report. When the court here attempted to do so, it acted on a misguided notion that its general advisory function embraced the role of censor. Yet pertinent code sections refer only to the court's duty to *instruct* the grand jurors (Pen. Code, § 914.1), to *charge* them as to their duties (*ibid.*), and to *advise* them *when such advice is asked* (Pen. Code, § 934). No authorization to tamper with the grand jury report is given to the court. Indeed, under Penal Code section 928, the grand jury is to submit a copy of its report on needs of county officers directly to each member of the board of supervisors. Since such copy does not go to the supervisors

through the court, it seems clear that the Legislature anticipated no judicial revision."

I conclude this opinion as I concluded my dissent in the 1973 grand jury case: "the censors of the world hold their posts as self-appointed guardians of their own particular narrow concept of orthodoxy—in literature, art, and government. The judge in this instance believed he was serving the public interest. But it was *his* interpretation of the public interest. Obviously the grand jury marched to a different drummer. The jury conclusions may have been wrong. But they had a right to be wrong. It is axiomatic that in a democratic society an evil is never corrected by suppression or censorship; it is made right by exposure to the marketplace of thought, discussion and controversy."

For all these reasons the Court of Appeal properly ordered issuance of a writ of mandate.