[No. B169890. Second Dist., Div. Three. Dec. 12, 2003.]

LOS ANGELES TIMES et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

## COUNSEL

Davis Wright Tremaine, Kelli L. Sager, Alonzo Wickers and Susan E. Seager for Petitioners.

Frederick R. Bennett for Respondent.

Brentford J. Ferreira, District Attorney, for Real Party in Interest the People.

Guzin & Steier and Donald H. Steier for Real Party in Interest Michael Baker, George Rucker and George Miller.

Daniel A. Guerrero for Real Party in Interest John Salazar.

Hennigan, Bennett & Dorman, J. Michael Hennigan, Donald F. Woods and Jeffrey S. Koenig for Real Party in Interest Archdiocese of Los Angeles.

## OPINION

**KLEIN, P. J.**—"The right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness."

(*Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 7 [92 L.Ed.2d 1, 106 S.Ct. 2735] (*Press-Enterprise II*).) "Underlying the First Amendment right of access to criminal trials is the common understanding that 'a major purpose of that Amendment was to protect the free discussion of governmental affairs,' . . . [and] to ensure that this constitutionally protected 'discussion of governmental affairs' is an informed one." (*Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596, 604–605 [73 L.Ed.2d 248, 102 S.Ct. 2613].) In California, this right of access is protected by Code of Civil Procedure section 124, which provides that "the sittings of every court shall be public." (See *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1216 [86 Cal.Rptr.2d 778, 980 P.2d 337] [First Amend. cases "inform our interpretation of [Code Civ. Proc., § 124]"].)

On the other hand, it has been "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." (*Douglas Oil Co. v. Petrol Stops Northwest* (1979) 441 U.S. 211, 218–219 [60 L.Ed.2d 156, 99 S.Ct. 1667]; see also *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1175 [245 Cal.Rptr. 774, 751 P.2d 1329] ["The importance of secrecy is well established in the context of the grand jury's criminal indictment function"].)

The instant petition for writ of mandate, filed by the Los Angeles Times and the Los Angeles Daily Journal, raises an issue of first impression: whether the general California rule of grand jury secrecy applies to *ancillary proceedings* such as the motions to quash grand jury subpoenas being litigated here.

After careful research and consideration, we conclude the motion to quash hearings, and the documents filed in connection therewith, should be closed and sealed *to the extent necessary to prevent disclosure of matters occurring before the grand jury*. Accordingly, we will grant the writ petition in part and deny it in part, and remand this matter to the superior court for further proceedings.

## BACKGROUND

1. *The underlying grand jury proceeding.*

The writ petition arises out of a grand jury investigation into allegations that certain Roman Catholic priests, employed by the Archdiocese of Los Angeles, committed acts of child molestation. As we noted in our previous opinion in this on-going matter, "On June 12, 2002, the Los Angeles County District Attorney served grand jury subpoenas on the archdiocese's custodian

of records, seeking all documents in the archdiocese's possession or control—including 'confidential personnel files'—that 'relate in any way to allegations of child molestation or sexual abuse' by any of the petitioners [three Roman Catholic priests]. The archdiocese produced the requested documents, which the trial court sealed[1] because the [priests] immediately moved to quash the subpoenas." (*M.B. v. Superior Court* (2002) 103 Cal.App.4th 1384, 1386 [127 Cal.Rptr.2d 454], fn. omitted.)

When the superior court ruled the subpoenas were not facially defective for failing to meet the affidavit requirements set forth in Code of Civil Procedure section 1985, subdivision (b) (affidavit shall be served with subpoena duces tecum showing good cause and materiality) and 1987.5 (service of subpoena duces tecum is invalid without affidavit), several of the priests filed a petition for writ of mandate in this court. That writ petition argued the subpoenas should be quashed because the grand jury had no authority to issue subpoenas duces tecum and, even if it did, the subpoenas were facially defective. The substantive evidentiary privilege claims being asserted against the subpoena demands were held in abeyance pending our resolution of the writ petition.

On December 2, 2002, in response to that writ petition, this court issued *M.B. v. Superior Court,* in which we held that "California criminal grand juries have the power to issue subpoenas duces tecum, and . . . such subpoenas do not require good cause affidavits." (*M.B. v. Superior Court, supra,* 103 Cal.App.4th at p. 1386.)

### 2. *Appointment of discovery referee.*

After our opinion was filed, the People, the individual priests and the Archdiocese stipulated to the appointment of Judge (Retired) Thomas Nuss (the referee) to resolve the substantive issues raised by the motions to quash. According to the referee, he had been appointed "to hear and determine any and all of the issues with regard to the [subpoenas duces tecum], whether of fact or of law, and to report a statement of decision in writing" to the superior court.

On April 1, 2003, the referee held a hearing on the motions to quash, during which counsel argued the general legal principles they felt applied to the various evidentiary privileges being asserted against the demands made in the subpoenas duces tecum. Almost the entire hearing was conducted in open

---

[1] Although the superior court issued a general sealing order before appointing a discovery referee to adjudicate pending motions to quash the grand jury subpoenas, we are treating the instant writ petition solely as a request to reverse the referee's subsequent order to close the motion to quash proceedings. We make no ruling at this time on any other closure order the superior court may have made.

court; out of a 135-page transcript, only 16 pages were filed under seal. However, the referee subsequently decided it had been a mistake to hold a public hearing. On August 27, 2003, he issued an "Order Denying Public Access To Pleadings and Decision Related to Grand Jury Subpoenas" which directed that all future pleadings, orders and hearings involved in litigating the motions to quash would be closed and sealed. On September 11, 2003, the Los Angeles Times and the Los Angeles Daily Journal filed the instant writ petition, seeking to overturn the referee's closure order.

## ISSUES RAISED

1. Petitioners, asserting there is "enormous public interest" in this case, ask us to vacate the referee's August 27 sealing order on the ground it violates their *presumptive right of public access* to judicial proceedings.

Petitioners also contend there is no legal justification for keeping under seal the superior court order appointing Judge Nuss to act as the discovery referee.

2. Real Party in Interest District Attorney of Los Angeles contends there is no presumptive right of public access to grand jury proceedings. However, the District Attorney also contends, *"the privilege litigation concerning the motion to quash the grand jury subpoenas in this case is merely ancillary to the grand jury proceeding itself.* Since there is intense public interest in the subject of the grand jury proceedings and the litigation of the motions to quash the subpoenas does not require disclosure of grand jury materials, there is no countervailing reason to maintain secrecy for these proceedings." (Italics added.)

3. Real Parties in Interest the Priests[2] and the Archdiocese[3] contend the writ petition must be dismissed as *procedurally* defective on the ground petitioners never made a formal motion in the superior court seeking to reverse the referee's sealing order.

As to the substantive issues, these real parties in interest agree with the District Attorney that there is no presumptive right of public access to grand jury proceedings. But, contrary to the District Attorney's position, they

---

[2] A return to the writ petition has been filed by "M.B., G.R., G.M., and eleven other priests who have had documents contained in their respective personnel files subpoenaed by the Los Angeles Grand Jury." These real parties in interest identify themselves collectively as "Priests."

[3] A return to the writ petition was filed by "The Roman Catholic Archbishop of Los Angeles, A Corporation Sole." For convenience, we will refer to this real party in interest as "the Archdiocese."

contend the *general rule of grand jury secrecy justifies the referee's blanket order sealing these ancillary grand jury proceedings.*

## DISCUSSION

### 1. *The writ petition is not procedurally barred.*

Real parties in interest the Archdiocese and the Priests ask us to dismiss the writ petition as premature because petitioners allegedly did not first exhaust all available remedies in the superior court. (See *Phelan v. Superior Court* (1950) 35 Cal.2d 363, 366 [217 P.2d 951] ["Although [Code Civ. Proc., § 1086] does not expressly forbid the issuance of the writ if another adequate remedy exists, it has long been established as a general rule that the writ will not be issued if another such remedy was available to the petitioner."].) The Archdiocese acknowledges petitioners did request access to the proceedings by informal letter, but the Archdiocese contends the writ petition must be dismissed because petitioners never filed a formal motion in the superior court asking to have the referee's sealing order reversed. This claim is meritless.

One of petitioners' informal letters was quite extensive, citing and discussing the same California and United States Supreme Court cases petitioners rely on in the writ petition itself. Moreover, the referee treated petitioners' informal requests as actual motions, saying: "Although a formal motion has not been filed, the referee is aware that the media have sought access to the pleadings and orders related to these proceedings," and "The referee . . . is aware that the media have sought access to the pleadings and orders related to these proceedings. The court treats those efforts as a request to hold public hearings and to permit public inspection of the pleadings and the referee's decision. In ruling on that motion, the court denies the requests for the reasons set forth herein."

Given the referee's treatment of petitioners' letters, we cannot see how forcing petitioners to make a more formal request for public access would amount to anything but a waste of time and effort. The request to dismiss the writ petition as premature is denied.

### 2. *Referee's appointment order will be made public.*

Petitioners ask us to make public the superior court's January 9, 2003, "Stipulation and Order for Reference" appointing Judge Nuss to be the discovery referee. No party objects to this, and we agree there is no reason to keep this aspect of the proceedings secret.

### 3. *Petitioners have no presumptive right of access to grand jury proceedings.*

Petitioners contend the referee's sealing order must be reversed because it violates their presumptive First Amendment right of access to judicial proceedings. This claim is meritless.

### a. *General rule of grand jury secrecy indicates no presumptive right.*

Petitioners contend that closing the hearings and sealing the pleadings involved in litigating the motions to quash will violate their right of access as established by *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, supra,* 20 Cal.4th 1178 (*NBC Subsidiary*).[4] Petitioners assert a "presumptive right of access" to the materials they seek, and argue, "the only questions are whether some exception to the public's presumptive access rights applies to the proceedings and records at issue, or if no exception applies, whether there is some compelling justification for the blanket closure and sealing order issued by Respondent. Neither requirement is present here."

The claim that *NBC Subsidiary* gives petitioners a presumptive right of access to grand jury proceedings is incorrect. In construing Code of Civil Procedure section 124's mandate that "the sittings of every court shall be public,"[5] *NBC Subsidiary* said: "[I]t is clear today that substantive courtroom proceedings in ordinary civil [and criminal][6] cases are 'presumptively open' and that section 124 must be interpreted to preclude closure of proceedings that satisfy the high court's historical tradition/utility considerations . . . ." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1217.) *But <u>NBC Subsidiary</u> also pointed out this presumptive right of access did not apply to grand jury proceedings,* saying: "In *Press-Enterprise II,* the high court distinguished 'presumptively open' preliminary hearings from other proceedings as to which there is no First Amendment right of access. It observed: '*Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic*

---

[4] Petitioners also rely on the judicial-access rules contained in California Rules of Court, rules 243.1 and 243.2, but these rules are codifications of *NBC Subsidiary.*

[5] Code of Civil Procedure section 124 provides: "Except as provided in Section 214 of the Family Code or any other provision of law, the sittings of every court shall be public."

[6] "We reject at the outset respondent's undeveloped suggestion that section 124 may have been intended to apply to criminal cases only, and not to civil cases. Nothing in the language of the statute or in its history supports such a construction." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1192, fn. 8; see *Kirstowsky v. Superior Court* (1956) 143 Cal.App.2d 745 [300 P.2d 163] [Code Civ. Proc., § 124 applied in criminal prosecution].)

*example is that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." [Citation.]' "* (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1212, fn. 29, italics added.)

Petitioners denigrate this language as mere "dicta in a footnote in *NBC Subsidiary,* which in turn quotes dicta from *Press-Enterprise II.*" Nevertheless, it is language that correctly states an essential principle about which petitioners are mistaken.

*Press-Enterprise II* described a two-part test for access claims. "In cases dealing with the claim of a First Amendment right of access to criminal proceedings, our decisions have emphasized two complementary considerations. First, because a ' "tradition of accessibility implies the favorable judgment of experiences," ' [citation], we have considered whether the place and process have historically been open to the press and general public. [¶] . . . [¶] Second, . . . the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question." (*Press-Enterprise II, supra,* 478 U.S. at p. 8.)

█ Grand jury proceedings fail both steps in this two-part test and, as a result, the usual presumption of access is reversed. (See, e.g., *Douglas Oil Co. v. Petrol Stops Northwest, supra,* 441 U.S. 211, 222, 223 [when deciding if "the traditional secrecy of the grand jury may be broken," "[i]t is clear . . . that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure"]; *United States v. Smith* (3d Cir. 1997) 123 F.3d 140, 148 [*Douglas Oil* "implicitly makes clear that grand jury proceedings are not subject to a First Amendment right of access under the test of 'experience and logic.' Historically, such proceedings have been closed to the public. Moreover, public access to grand jury proceedings would hinder, rather than further, the efficient functioning of the proceedings. [¶] Not only are grand jury proceedings not subject to any First Amendment right of access, but third parties can gain access to grand jury matters only under limited circumstances."]; *In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records* (11th Cir. 1989) 864 F.2d 1559, 1562 ["In order to justify lifting the secrecy that normally surrounds the grand jury proceedings, courts must find a 'particularized need' for the disclosure that outweighs the benefits of maintaining the secrecy. [Citation.] Even when the person requesting such disclosure has shown a particularized need for the materials, access is limited and covers only those materials actually needed."].)

b. *California case law likewise demonstrates no presumptive right.*

■ Petitioners have no presumptive right of access to grand jury proceedings or materials under California law. A trilogy of seminal California Supreme Court cases demonstrates that *NBC Subsidiary*'s footnote 29 correctly states the general rule regarding grand jury secrecy. These cases demonstrate the power to disclose grand jury material is far more restricted than the power to prevent disclosure, and that a superior court exercising supervisory authority over a grand jury has inherent power to prevent unauthorized disclosures of grand jury material.

*People v. Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430 [119 Cal.Rptr. 193, 531 P.2d 761], held that "if a proposed grand jury report exceeds established legal limits, the superior court which convenes the grand jury and which is responsible for its supervision may properly refuse to file the report. *Although no California statute explicitly authorizes such judicial action, this limited review is implicit in the statutory scheme* confining the grand jury's investigatory authority to specifically enumerated subjects . . . ." (*Id.* at p. 433, italics added.)

*McClatchy Newspapers v. Superior Court, supra,* 44 Cal.3d 1162, held a superior court had properly prevented a grand jury from disclosing "raw evidentiary materials gathered during a secret watchdog investigation, including transcripts of testimony, summaries and analyses of testimony, and documentary exhibits." (*Id.* at p. 1167.) *McClatchy* reasoned: "[The] use of secrecy to protect grand jurors from the abuses of the Crown dates from the 17th century; for the most part, grand jury proceedings since that time have been closed to the public and records of such proceedings have been kept from the public eye. [Citation.] Most importantly, 'The right and duty of the grand jurors to conduct their investigations, deliberations and voting in secret, which were won and established in England, are substantially the same for the modern California grand jurors.' [Citation.] [¶] *That the Legislature intended to incorporate this well-established heritage of secrecy into the present grand jury system is plainly and amply shown in the governing provisions of the Penal Code.*" (*Id.* at p. 1173, italics added.) "[G]rand jury secrecy is the rule and openness the exception, permitted only when specifically authorized by statute." (*Id.* at p. 1180.)

*Daily Journal Corporation v. Superior Court* (1999) 20 Cal.4th 1117 [86 Cal.Rptr.2d 623, 979 P.2d 982], held a superior court could not disclose materials gathered during a grand jury investigation into the notorious Orange County bankruptcy case, after the grand jury terminated without indicting anyone. "The question before us is whether the superior court in this matter

had authority to disclose grand jury materials to the public when none of the [grand jury] statutes was applicable. The Court of Appeal determined that the answer is yes, based on the superior court's inherent powers, including its power to supervise grand jury proceedings. . . . [¶] The Court of Appeal purported to find no statutes or cases that would prohibit the disclosure of criminal grand jury materials in this matter. Concluding that the Legislature 'seems not to have addressed the question, ' it ruled that, in effect, whatever exercise of authority to disclose grand jury materials has not been expressly prohibited by the Legislature is permitted. We disagree." (*Id.* at p. 1124.) Rather, "the Legislature has addressed the question of grand jury secrecy and disclosure of grand jury materials extensively and comprehensively in the Penal Code. Viewing that statutory scheme as a whole, it appears that the Legislature intended disclosure of grand jury materials to be strictly limited. As we explained more than a century ago: 'In this State the whole matter [of disclosing grand jury proceedings] is regulated by statute.' [Citation.] By enacting the statutes governing the 'exceptional cases' [citation] in which a court may order disclosure of grand jury materials, the Legislature has, in effect, occupied the field; absent express legislative authorization, a court may not require disclosure." (*Id.* at pp. 1124–1125, fn. omitted.)

■ This line of cases establishes that nondisclosure is the preeminent rule for California grand jury proceedings, that public access is regulated by express statutory authorization, and that even the inherent powers of a superior court supervising a grand jury are severely restricted when the court seeks to disclose grand jury materials. Clearly there is no presumptive right of public access to grand jury proceedings in California.

4. *Status of "ancillary grand jury proceedings" in the superior court.*

All the parties agree that whether the California rules governing grand jury secrecy apply to *ancillary proceedings*, such as the motions to quash grand jury subpoenas being litigated herein, is a question of first impression.

Petitioners argue all of the case law we have discussed so far is irrelevant because the "Penal Code provisions governing grand jury secrecy . . . only apply to the disclosure of 'testimony and materials placed before' the grand jury, and have no application to the pleadings, orders, or hearings in the matter pending before Judge Nuss." Petitioners assert, "Respondent's August 27 Order is based solely on the rationale that secrecy is necessary to protect the confidentiality of grand jury proceedings. [Citation.] But Petitioners are not seeking access to documents subpoenaed by the grand jury, to any witnesses' testimony before the grand jury, or to grand jury deliberations."

No California case has dealt with the problem of so-called *ancillary grand jury proceedings*, proceedings that relate to a grand jury's investigation but

do not occur in front of the grand jurors themselves, such as the discovery matters being litigated in front of Judge Nuss. Fortunately, however, we do not write on a completely blank slate. We have found it useful to examine how the federal rules and other states have approached this problem.

a.   *Consideration of former rule 6, Federal Rules of Criminal Procedure (28 U.S.C.).*

Before 1983, federal grand juries were governed by a general rule of secrecy which, like California's grand jury statutory scheme, did not expressly address *ancillary proceedings.* Federal Rules of Criminal Procedure, former rule 6(e), provided only that a "grand juror, an interpreter, a stenographer [etc.] . . . shall not disclose *matters occurring before the grand jury,* except as otherwise provided for in these rules." (Italics added.) (See *Securities & Exchange Com'n v. Dresser Indus.* (D.C. Cir. 1980) 202 U.S. App. D.C. 345 [628 F.2d 1368, 1382].)

However, federal cases interpreting the pre-1983 version of rule 6(e), as well as courts in states having general grand jury secrecy laws similar to California's, conclude that *ancillary proceedings should be kept secret to the extent necessary to safeguard the grand jury process*; i.e., to the extent ancillary proceedings might tend to reveal what has transpired, or is likely to transpire in the future, before the grand jury.

"Prior to the 1983 amendment adding a provision for sealing grand jury subpoenas, [citation], federal courts were faced with the question of whether a motion for disclosure of grand jury subpoenas under Rule 6(e) would fall under the general rule of nondisclosure of 'matters occurring before the grand jury.' Generally, the federal courts have held that disclosure of grand jury subpoenas would reveal the names of witnesses, which are 'matters occurring before the grand jury.' [Citations.] The secrecy requirement of Rule 6(e) applies not only to information drawn from transcripts of grand jury proceedings, but also to anything which 'may tend to reveal what transpired before the grand jury.' [Citation.]" (*Pigman v. Evansville Press* (Ind.Ct.App. 1989) 537 N.E.2d 547, 549–550.) "*Although the bare language of the federal rule and the Indiana statute each suggests that confidentiality is limited to what took place behind the closed door of the grand jury room, . . . the courts have not so limited the scope of* Rule 6(e), in order to implement the policy of secrecy so fundamental to the functioning of the grand jury system." (*Id.* at p. 550, italics added.)

Our own research has confirmed *Pigman*'s analysis. (See, e.g., *In re Grand Jury Investigation* (5th Cir. 1980) 610 F.2d 202, 216 [former rule 6(e) applies "not only to information drawn from transcripts of grand jury proceedings,

but also to anything which 'may tend to reveal what transpired before the grand jury.' "]; *Application of State of California* (E.D.Pa. 1961) 195 F.Supp. 37, .40 [although "not matters occurring before the grand jury, it seems obvious that the names of witnesses subpoenaed to testify, as well as documents subpoenaed and used by them in their deliberations, are matters 'occurring before the grand jury.' "]; *State ex rel. Beacon Journal v. Waters* (1993) 67 OhioSt.3d 321 [1993 Ohio 77, 617 N.E.2d 1110, 1113–1114] [subpoenas and witness book were covered by state's general grand jury secrecy rule, relying on federal cases construing former rule 6(e)]; *In re Proc. of Multicounty Grand Jury* (Okla.Crim.App. 1993) 847 P.2d 812, 815 ["We will not interpret such omissions from the Oklahoma statutes as a conscious decision to exclude from secrecy protections court hearings on matters affecting a grand jury proceeding, including witness immunity hearings"]; *Palm Beach Newspapers, Inc. v. Doe* (Fla.Dist.Ct.App. 1984) 460 So.2d 406, 409 ["We hold that a hearing ancillary or related to a grand jury session constitutes a proceeding which comes within the protections of [Fla. law providing that grand jury proceedings are secret]."].)

█ This case law from foreign jurisdictions offers valuable guidance because these cases were interpreting statutes that, *like our own Penal Code's grand jury secrecy provisions,*[7] contained no express provision for handling ancillary proceedings.

### b. *Current federal grand jury rules also provide guidance.*

In 1983, the federal rules were amended to include specific provisions for handling ancillary grand jury proceedings. Federal Rule of Criminal Procedure, rule 6(e)(5) (28 U.S.C.), now provides: "Subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the

---

[7] "The relevant statutes are as follows. [¶] Penal Code section 939.1 provides that . . . a superior court may order public sessions of the grand jury when it involves matters affecting the public welfare. Otherwise, grand jury proceedings are conducted in secrecy. (Pen. Code, § 915 [grand jury 'shall retire to a private room' to conduct inquiry into offenses].) . . . [N]o person is permitted to be present during criminal sessions of the grand jury except the members and witnesses actually under examination. (*Id.,* § 939.) Deliberations of the grand jury are completely private; no person other than the grand jurors themselves may be present during 'the expression of the opinions of the grand jurors, or the giving of their votes' on any criminal matter before them. (*Ibid.*) [¶] Grand jurors must take an oath that they ' "will not disclose any evidence brought before the grand jury, nor anything which [they] or any other grand juror may say, nor the manner in which [they] or any other grand juror may have voted on any matter before the grand jury." ' (Pen. Code, § 911.) . . . Unless required by the court, grand jurors are not permitted to disclose any evidence adduced before the grand jury or anything said by a member of the grand jury. (*Id.,* § 924.1, subd. (a).) Moreover, each grand juror 'shall keep secret' the deliberations and voting of the grand jury. (*Id.,* § 924.2.) A grand juror may not be questioned about any deliberations or vote relative to a matter pending before the grand jury, 'except for a perjury of which he may have been guilty in making an accusation or giving testimony to his fellow jurors.' (*Id.,* § 924.3.)" (*Daily Journal Corp. v. Superior Court, supra,* 20 Cal.4th at pp. 1122–1123.)

extent necessary to prevent disclosure of a matter occurring before a grand jury." Federal Rule of Criminal Procedure, rule 6(e)(6) (28 U.S.C.), now provides: "Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."

In formulating a California approach to the problem of ancillary grand jury proceedings, we can be guided by the amended federal rule. We agree with the view of one federal court, which explained: "*As a matter of judicial administration, initially closing all ancillary proceedings makes good sense. If a hearing is about something 'affecting' a grand jury investigation, there will nearly always be a danger of revealing grand jury matters.* Consider a challenge to a witness's claim of a testimonial privilege. The prosecutor appears before the Chief Judge seeking an order to compel testimony. The witness's identity, the fact that he was subpoenaed to testify, the fact that he invoked the privilege in response to questions, the nature of the questions asked—all these would be, according to our precedent, [citation], 'matters occurring before the grand jury.' To suppose that the First Amendment compels the court to conduct such hearings by placing the witness behind a screen and by emptying the courtroom each time a grand jury matter reaches the tip of an attorney's or the judge's tongue is to suppose the ridiculous . . . . '[C]ourts cannot conduct their business that way,' nor should they be compelled to do so." (*In re Motions of Dow Jones & Co., Inc.* (D.C. Cir. 1998) 142 F.3d 496, 501–502, fn. omitted, italics added.) "*A proceeding in the district court to quash a subpoena, or to compel testimony, or to immunize a witness would, it seems to us, almost invariably reveal matters occurring before the grand jury, and thus may properly be closed to the public. In ancillary proceedings dealing with other subjects, however, it may be difficult to determine at the outset whether grand jury matters might wind up being discussed.*" (*Id.* at p. 502, italics added.)

We find the current federal rule addressing ancillary grand jury proceedings to be relevant, reasonable and persuasive. It does not conflict with the express provisions of California's grand jury statutory scheme, and it is consistent with our Supreme Court's interpretation of that statutory scheme. It provides an excellent model for our guidance in this matter. (See *State Department of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1044 [6 Cal.Rptr.3d 441, 79 P.3d 556] ["to the extent the United States Supreme Court grounded the *Ellerth/Faragher* [Title VII] defense in the doctrine of avoidable consequences [citations], its reasoning applies to California's FEHA" because it was "consistent with the two main purposes of the FEHA" and "[n]othing in the language of the FEHA precludes application of the avoidable consequences doctrine"].)

### 5. *Conclusion: Ancillary proceedings to be secret "to the extent necessary."*

■ Hence, we conclude the motion to quash litigation to be conducted by Judge Nuss, the discovery referee in this case, constitutes an ancillary grand jury proceeding. We further conclude this *ancillary proceeding should be closed and sealed to the extent necessary to prevent disclosure of matters occurring before the grand jury,* which would include preventing disclosure of information that might reveal the nature, scope or direction of the grand jury's investigation. (See, e.g., *In re Motions of Dow Jones & Co., Inc., supra,* 142 F.3d at pp. 500–501 [phrase "matters occurring before the grand jury" "includes not only what has occurred and what is occurring, but also what is likely to occur" and "[e]ncompassed within the rule of secrecy are . . . 'the strategy or direction of the investigation[]' "]; *In re Subpoena to Testify Before Grand Jury* (11th Cir. 1989) 864 F.2d 1559, 1564 ["Naturally, in responding to requests for release of information, the University is obligated to avoid revealing the direction of the grand jury investigation"]; *In re Grand Jury Proceedings Relative to Perl* (8th Cir. 1988) 838 F.2d 304, 307 ["While the disclosure of [business records] created independently of the grand jury investigation is less likely to impinge upon the policy underlying grand jury secrecy, the disclosure of these documents reveals 'at the very least, the direction of the grand jury's investigation and the names of persons involved, and thus falls within Rule 6(e)(2).' "].)

This rule will necessitate "an individualized determination whether a given disclosure will, when reasonably considered in the context of the particular grand jury inquiry, tend to reveal some secret aspect of the grand jury investigation." (*In re Grand Jury Proceedings* (6th Cir. 1988) 851 F.2d 860, 863.) We acknowledge this procedure "may sometimes require considerable expenditure of judicial time to carry out the often close analysis necessary to determine whether disclosure of given documentary evidence will reveal the nature, scope, or direction of grand jury proceedings. [Citations.]" (*Id.* at p. 865.) However, we believe this approach will provide for the judicial supervision needed to safeguard the grand jury's effective operation.

### 6. *Remand to superior court.*

In the case at bar, the referee's August 27 decision stated: "The legislative and common law secrecy afforded Grand Jury proceedings reflect an overriding interest in the confidentiality of Grand Jury proceedings. There is a *substantial probability that interest will be prejudiced absent the sealing of the orders and decisions at issue herein. Given the broad mandate of Grand Jury secrecy, there is no more narrow or less restrictive means of achieving that overriding interest."*

This language appears to have been taken from *NBC Subsidiary*, which held that *"before* substantive courtroom proceedings are closed or transcripts are ordered sealed, a trial court must hold a hearing and expressly find that (i) there exists an overriding interest supporting closure and/or sealing; (ii) there is a substantial probability that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1217–1218, fns. omitted.)

■ But, as we have held in this opinion, *NBC Subsidiary* is not the correct test for determining the appropriate degree of public access to grand jury proceedings and materials. As a general matter, there is no public right of access to grand jury proceedings and materials, and it is the party seeking disclosure who has the burden of overcoming a presumption of grand jury secrecy. This strong principle of grand jury secrecy warrants applying the same nondisclosure presumption to the ancillary grand jury proceeding at issue here. Contrary to the District Attorney's contention, it is not at all clear the motion to quash litigation can be carried out publicly without disclosing grand jury matters that should remain secret. At the same time, it is at least theoretically possible that some aspect of this privilege litigation can be safely disclosed. Therefore, we will remand this matter to the superior court so the referee may make the individualized disclosure determinations we have described in this opinion.

## DISPOSITION

The superior court shall publicly file its order appointing Judge Nuss to act as a discovery referee. In all other respects, the petition for writ of mandate is denied. The matter is remanded for further proceedings in the superior court in conformance with the opinions expressed herein. Order to show cause issued on September 23, 2003, is hereby discharged.

Croskey, J., and Kitching, J., concurred.

Petitioners' petition for review by the Supreme Court was denied February 24, 2004. George, C. J., was of the opinion that the petition should be granted.