65 Cal.Rptr.3d 90 (2007)
154 Cal.App.4th 482
Thomas Lee GOLDSTEIN, Petitioner,
v.
SUPERIOR COURT of Los Angeles County, Respondent;
Grand Jury of the County of Los Angeles et al., Real Parties in Interest.
No. B199147.
Court of Appeal of California, Second District, Division Three.
August 23, 2007.
*91 Kaye, McLane & Bednarski, Ronald O. Kaye, David S. McLane, Marilyn E. Bednarski, Pasadena, and Matthew N. Sirolly for Petitioner.
No appearance for Respondent.
Raymond G. Fortner, Jr., County Counsel and Gordon W. Trask, Principal Deputy, for Real Party in Interest Grand Jury of the County of Los Angeles.
Collins, Collins, Muir & Stewart, John J. Collins, Tomas A. Guterres, South Pasadena, Douglas Fee and Eric C. Brown, Beverly Hills, for Real Parties in Interest County of Los Angeles, John Van de Kamp and Curt Livesay.
KLEIN, P.J.
Thomas Lee Goldstein seeks writ review of an order of the superior court denying Goldstein access to the raw evidentiary materials received by the 1988-1989 and 1989-1990 Los Angeles County Grand Juries during their investigation into the misuse of jailhouse informants over the preceding 10 years. Goldstein seeks these materials in connection with his pending federal civil rights lawsuit (42 U.S.C. § 1983) in which he asserts he wrongfully was convicted of murder in 1980 and spent 24 years in prison based on the perjured testimony of a jailhouse informant. The trial court denied Goldstein's motion, finding the statutory provisions relied upon by Goldstein (Pen.Code, §§ 924.2, 929 & 939.1) did not authorize disclosure. The trial court concluded that, absent express authorization, the general rule of grand jury secrecy, stated in McClatchy Newspapers v. Superior Court (1988) 44 Cal.3d 1162, 245 Cal.Rptr. 774, 751 P.2d 1329 (McClatchy Newspapers), prevailed.
However, Goldstein does not seek public disclosure of grand jury materials, which McClatchy Newspapers addressed. Rather, Goldstein seeks discovery of grand jury materials to redress an injustice investigated by the grand jury, and he is willing to abide by a protective order limiting the use of the grand jury materials to his pending federal civil rights case. In these circumstances, we conclude the Superior Court of Los Angeles County, as part of its inherent authority to prevent injustice and as part of its supervisory power over the grand jury, has discretion to grant Goldstein's motion if he is able to demonstrate that disclosure is necessary "for the purposes of public justice, or for the protection of private rights...." (Ex Parte Sontag (1884) 64 Cal. 525, 526, 2 P. 402.) In making this determination, the trial court should engage in the three-step test announced in Douglas Oil Co. v. Petrol Stops Northwest (1979) 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (Douglas Oil). Under that test, parties seeking grand jury material in federal court must *92 make a particularized showing that (1) the material they seek is needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed.
We therefore grant the writ petition and remand the matter to the trial court with directions to reconsider Goldstein's motion in light of the views expressed in this opinion. If the trial court determines Goldstein has demonstrated a need to discover the grand jury materials that outweighs the need for continued secrecy, it should also indicate the terms of the protective order, if any, under which the material is disclosed to Goldstein. In the event the trial court concludes justice does not require discovery in this case, it nonetheless must assess the need for continuing secrecy of the grand jury materials. As indicated in Socialist Workers Party v. Grubisic (1980) 619 F.2d 641 (Socialist Workers Party), the trial court must perform this task in order to allow the federal court to make an informed assessment, and one that comports with considerations of comity, in determining in Goldstein's federal civil rights case whether the grand jury materials are subject to disclosure under federal law.

BACKGROUND

1. Goldstein's 1980 conviction of murder.

On November 16, 1979, Goldstein was arrested for murder based on a homicide that occurred 13 days earlier a few blocks from Goldstein's Long Beach apartment. At the time, Goldstein was a 30-year-old veteran of the Marines who was studying engineering at Long Beach City College. Goldstein had no prior convictions or history of violence. No one acquainted with the murder victim ever suggested the victim had ever had any contact with Goldstein. No forensic evidence linked Goldstein to the homicide. Goldstein became a suspect in the case based on a shooting incident that occurred a week after the homicide. An eyewitness to that incident saw the gunman enter Goldstein's apartment building. Long Beach police detectives thereafter showed numerous photographs, including Goldstein's, to Loran Campbell, one of the five eyewitnesses to the homicide. Although Campbell did not recognize any of the individuals depicted in the photographs and Goldstein did not match Campbell's initial description of the murder suspect, one of the detectives focused on Goldstein's photograph and asked if Goldstein could have been the individual Campbell saw running from the scene. Campbell replied it was possible but he was not certain. One of the detectives thereafter wrote in a police report that Campbell had selected Goldstein's photograph and said: "That looks like the man. I'm not sure and I'm not positive but that looks like him." Campbell thereafter identified Goldstein at Goldstein's murder trial. However, as noted below, Campbell later retracted his identification of Goldstein, explaining he had been influenced by the detectives and his desire to assist their investigation.
Two days after Goldstein's arrest, Edward Floyd Fink, a heroin addict with several prior felony convictions, was placed in the same cell as Goldstein in the Long Beach City Jail. At Goldstein's murder trial, Fink testified Goldstein told him he was in jail because he shot a man in a dispute over money. Fink also testified he received no benefit as a result of his testimony. Goldstein was convicted as charged.

2. The grand jury proceedings.

Commencing in 1988, the Los Angeles County Grand Jury investigated the misuse *93 of jailhouse informants in criminal trials. In 1990, it issued a report that concluded misuse of jailhouse informants had been pervasive over the preceding 10-year period. With respect to the Los Angeles County District Attorney's office, the grand jury found "deliberate and informed declination to take the action necessary to curtail the misuse of jailhouse informant testimony." These deficiencies included failing to create a centralized index to disseminate impeachment information pertaining to informants, such as the benefit they received for their testimony and their history of cooperation with law enforcement.
On August 30, 1990, the Superior Court of Los Angeles County issued an order stating the "material accumulated and used by the 1988-89 Grand Jury and the 1989-90 Grand Jury in their investigations of the jailhouse informants is to be kept secure by the court. [¶] The material is not to be viewed, inspected or copied except by order of the Presiding Judge, Assistant Presiding Judge, or the Supervising Judge of the Criminal Division."

3. Federal habeas corpus proceedings result in Goldstein's release from prison.

At an evidentiary hearing conducted by Magistrate Robert N. Block in August of 2002 in connection with a federal petition for writ of habeas corpus filed by Goldstein, the eyewitness at Goldstein's trial, Loran Campbell, recanted his identification of Goldstein. Campbell explained he had been overanxious to help the police and he identified Goldstein based on what the police told him and his desire to be a good citizen, not based on his observations on the night of the homicide. Goldstein also presented evidence of benefits Fink received during the time he cooperated with law enforcement.
At the conclusion of the hearing, Magistrate Block found Campbell's testimony credible and further found Fink was representative of the jailhouse informant addressed in the grand jury's report. Magistrate Block stated: "It is readily apparent to this Court that Fink fits the profile of the dishonest jailhouse informant that the Grand Jury Report found to be highly active in Los Angeles County at the time of [Goldstein's] conviction." As a result of Magistrate Blocks' findings, Goldstein was released from custody in April of 2003, after serving 24 years in prison.

4. Goldstein files a civil rights action in federal district court.

On November 29, 2004, Goldstein filed a civil suit in the Central District of California, stating causes of action under the federal civil rights statute, 42 U.S.C. § 1983, based on his assertedly wrongful conviction and incarceration. In his federal civil rights case, Goldstein is suing the City of Long Beach, four individual Long Beach police detectives, the County of Los Angeles, John Van de Kamp and Curt Livesay. Goldstein's federal lawsuit asserts, inter alia, the defendants obtained Goldstein's conviction based on their pattern and practice of misusing the testimony of jailhouse informants in criminal cases.

5. Goldstein's attempts to access the grand jury material.

Goldstein initially sought access to the grand jury material by letter dated February 1, 2006, to the Presiding Judge of the Superior Court of Los Angeles County and the supervising judge of the criminal division. Counsel for the Superior Court of Los Angeles County (hereinafter referred to as "court counsel"), initially indicated the superior court would not disclose the material. However, when Goldstein's *94 counsel indicated willingness to abide by a protective order limiting use of-the material to Goldstein's federal civil rights case, court counsel indicated a subpoena would be needed in order to release the grand jury material.
On July 5, 2006, Goldstein sent court counsel further information about the case including the declaration of Verna Wefald, an attorney who had accessed the grand jury materials in connection with two federal habeas corpus proceedings. Wefald asserted that Douglas Dalton, special counsel appointed to assist the grand jury in its investigation into the misuse of jailhouse informants, told her the grand jury materials were indexed and organized for the express purpose of facilitating review of the material by future litigants.[1]
On July 7, 2006, Goldstein served a subpoena issued in his federal civil rights case on the Superior Court of Los Angeles County requesting production of the grand jury materials.
On July 27, 2006, court counsel objected to the subpoena and requested Goldstein voluntarily withdraw it and seek access to the material "[p]ursuant to the [the 1990 order of the Superior Court, by filing a motion] before the Presiding Judge, the Assisting Presiding Judge, or the Supervising Judge of the Criminal Division of the Superior Court."
Goldstein complied with the request on September 19, 2006. Goldstein's motion relied on various Penal Code sections and specifically asked the trial court to set forth in its ruling whether and to what extent there was a continuing need for secrecy of the material in order to permit Goldstein to litigate the issue in federal court.
Counsel for the County of Los Angeles (hereinafter referred to as "county counsel"), appearing on behalf of the grand jury, filed a response to Goldstein's motion that essentially conceded Goldstein might eventually be granted access to the grand jury materials by enforcing a subpoena duces tecum issued in Goldstein's federal civil rights case, citing Socialist Workers Party, supra, 619 F.2d 641.
Socialist Workers Party directs that a federal district court enforce a federal subpoena seeking disclosure of state grand jury materials only after first allowing the state court to determine the need for continuing secrecy of the materials. The federal court thereafter considers this information *95 in determining whether disclosure should be ordered under the three-part Douglas Oil test. Under that test, as noted above, parties seeking grand jury transcripts must make a particularized showing that (1) the material they seek is needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed. (Douglas Oil, supra, 441 U.S. at p. 222, 99 S.Ct. 1667.)
County counsel indicated that, if the superior court found a continuing need to maintain secrecy of the requested documents, it should specify which documents should remain sealed and why. County counsel requested the trial court appoint a special master to review the pleadings in Goldstein's federal case and the grand jury materials at issue and thereafter advise the trial court. In reply, Goldstein disputed the need for continued secrecy and opposed county counsel's suggestion that a special master be appointed as causing unnecessary delay.
On March 13, 2007, the trial court conducted a hearing on the motion. At the hearing, Wefald, the attorney who previously had accessed the grand jury materials, indicated it had been a relatively simple matter to review the material because the "records were organized" for the benefit of future litigants. Wefald stated there was an index of witnesses, an index of exhibits and three binders containing summaries of the testimony of every witness.
On March 22, 2007, the trial court issued a written denial of Goldstein's motion. The trial court found the Penal Code sections cited by Goldstein did not apply to the situation presented and, in the absence of a statute expressly permitting disclosure, Goldstein could not overcome the general rule that grand jury proceedings are secret. (McClatchy Newspapers, supra, 44 Cal.3d 1162, 245 Cal.Rptr. 774, 751 P.2d 1329.)
Goldstein then filed the instant petition for writ of mandate.[2] Goldstein's petition asserts he again has served a subpoena issued in the federal civil rights case on the Superior Court of Los Angeles County requesting the grand jury materials.

DISCUSSION
In this case, we must first determine whether the trial court was correct in its ruling that none of the statutory provisions cited by Goldstein authorized disclosure of the grand jury materials. Finding the trial court correctly concluded they did not, we next consider whether the trial court, independent of any statutory provision, had authority to permit access to the requested grand jury materials for use in Goldstein's civil rights case to prevent injustice. Finally, we consider the trial court's obligation to perform the state court function contemplated in Socialist Workers Party.

1. The statutory provisions cited by Goldstein are not applicable.

Goldstein claims the trial court had discretion to disclose the grand jury materials he requested pursuant to Penal Code sections 924.2, 929 and 939.1.[3] None of the cited sections assists Goldstein.

*96 a. Section 924.2.

Section 924.2 provides: "Each grand juror shall keep secret whatever he himself or any other grand juror has said, or in what manner he or any other grand juror has voted on a matter before them. Any court may require a grand juror to disclose the testimony of a witness examined by a grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court, or to disclose the testimony given before the grand jury by any person, upon a charge against such person for perjury in giving his testimony or upon trial therefor."
Goldstein argues section 924.2, originally enacted as section 926 in 1872, makes clear the legislative intent to codify the power of the superior court to disclose grand jury materials for use in an ongoing judicial proceeding when necessary to achieve justice. Goldstein notes the language of the section is archaic. He asserts there is no need for a live witness to be before the court at the time of the request for disclosure. Rather, the section requires only an active, ongoing litigation. Goldstein asserts the trial court should have read section 924.2 expansively to accomplish the result intended.
Section 924.2 was enacted to protect grand jurors by limiting the circumstances under which they could be called as witnesses. (People v. Northey (1888) 77 Cal. 618, 633, 19 P. 865.) Further, Goldstein does not claim a witness at the trial of his federal case will give testimony that is inconsistent with testimony given before the grand jury and there is no pending perjury investigation. Thus, section 924.2 has no application here.

b. Sections 929 and 939.1.

Section 929 provides: "As to any matter not subject to privilege, with the approval of the presiding judge of the superior court or the judge appointed by the presiding judge to supervise the grand jury, a grand jury may make available to the public part or all of the evidentiary material, findings, and other information relied upon by, or presented to, a grand jury for its final report in any civil grand jury investigation provided that the name of any person, or facts that lead to the identity of any person who provided information to the grand jury, shall not be released...."
Section 939.1 allows public grand jury sessions when an investigation affects the public interest.
Goldstein argues sections 929 and 939.1, read together, provide authority to release the grand jury materials at issue here. However, section 929, by its express terms, merely permits a sitting grand jury to incorporate portions of the raw evidentiary material it received into its report. Section 929 was not enacted until 1998, eight years after the grand jury report on the misuse of jailhouse informants. Moreover, section 929 requires the grand jury to obtain approval from the superior court before it includes raw evidentiary material in its report. Section 939.1 is not applicable because the grand jury held no public sessions.
In sum, we agree with the trial court's assessment of the statutory provisions cited by Goldstein.
2. The superior court that supervised a grand jury retains authority to make limited disclosure of grand jury materials to prevent injustice.

a. General rule against public disclosure of grand jury proceedings.

Both federal and California law recognize that grand juries must operate in secrecy in order to perform their functions.[4] *97 Douglas Oil itemized several of the "distinct interests served by safeguarding the confidentiality of grand jury proceedings" relative to a criminal indictment. (Douglas Oil, supra, 441 U.S. at p. 219, 99 S.Ct. 1667.) "First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." (Ibid.)
McClatchy Newspapers observed that secrecy also is necessary "when the grand jury conducts a watchdog investigation of local government operations...." (McClatchy Newspapers, supra, 44 Cal.3d at p. 1175, 245 Cal.Rptr. 774, 751 P.2d 1329.) In that circumstance, "the efficacy and credibility of watchdog investigations ... require that witnesses testify without fear of reproach by their peers or their superiors. Though the watchdog investigation and report serve a different social purpose than the criminal indictment, eliciting candid testimony is obviously critical to both functions of the grand jury." (Ibid.) Moreover, "in considering the effects of disclosure of grand jury proceedings, the courts must also consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." (Douglas Oil, supra, 441 U.S. at p. 222, 99 S.Ct. 1667.)
For all these reasons, the general rule is that there is no presumptive right of public access to grand jury materials under California law. (Los Angeles Times v. Superior Court (2003) 114 Cal.App.4th 247, 263, 7 Cal.Rptr.3d 524.) However, this case does not involve public disclosure of grand jury materials. Rather, Goldstein seeks disclosure of grand jury materials pursuant to a protective order limiting use of the materials to his pending federal civil rights case. Under these circumstances, the general rule of no public right of access is simply not in issue.

b. Disclosure of grand jury materials to prevent injustice.

Douglas Oil noted "it has been recognized that in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings. [Citation.]" (Douglas Oil, supra, 441 U.S. at pp. 219-220, 99 S.Ct. 1667.) The high court observed that "recognition of the occasional need for litigants to have access to grand jury transcripts led to the provision in Fed. Rules Crim. Proc, 6(e)(2)(C)(i) that disclosure of grand jury transcripts may be made "when so directed by a court preliminarily to or *98 in conjunction with a judicial proceeding.'" (Id. at p. 220, 99 S.Ct. 1667.)
We believe a similar rule appears in California law. Ex Parte Sontag, supra, 64 Cal. 525, 2 P. 402, addressed whether a grand juror could be compelled to reveal how he had voted on an indictment. Sontag noted grand jurors are bound by their oath "to preserve inviolate the secrets of the grand jury room. Public policy would seem to forbid vain disclosures made to gratify idle curiosity. `But,' say Thompson and Merriam, `when, for the purposes of public justice, or for the protection of private rights, it becomes necessary, in a court of justice, to disclose the proceedings of the grand jury, the better authorities now hold that this may be done____' (Thorn. & Mer. on Juries, § 703.)" (Id. at p. 526, 2 P. 402.)
Consequently, we conclude that, under both federal and state law, when, in the words of Ex Parte Sontag, supra, 64 Cal. at p. 526, 2 P. 402, "it becomes necessary, in a court of justice, to disclose the proceedings of the grand jury," the absence of a statutory provision expressly authorizing such disclosure does not foreclose the superior court that supervised the grand jury from permitting limited disclosure to prevent injustice.
In determining whether justice requires disclosure in any given situation, the trial court should apply the well settled three-part test announced in Douglas Oil. In that case, the United States Supreme Court synthesized two of its earlier decisions related to discovery of grand jury materials (Dennis v. United States (1966) 384 U.S. 855, 870, 86 S.Ct. 1840, 16 L.Ed.2d 973; United States v. Procter & Gamble (1958) 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077) and announced the following "standard for determining when the traditional secrecy of the grand jury may be broken: Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." (Douglas Oil, supra, 441 U.S. at p. 222, 99 S.Ct. 1667.)
Although the high court framed this test in reference to Fed. Rules Crim. Proa, rule 6(e), we note that rule 6(e) was not the source of the authority for disclosing grand jury materials when the interests of justice require it. Rather, Douglas Oil indicated the authority to disclose grand jury materials flows from the court's inherent responsibility to prevent injustice and rule 6(e) merely reflected that authority.
We are aware that in Daily Journal Corp. v. Superior Court (1999) 20 Cal.4th 1117, 1124, 86 Cal.Rptr.2d 623, 979 P.2d 982, another case involving public disclosure of grand jury proceedings, our Supreme Court relied upon Ex Parte Sontag, supra, 64 Cal. at p. 527, 2 P. 402, for the proposition that, "`In this State the whole matter [of disclosing grand jury proceedings] is regulated by statute.'" (Daily Journal Corp. v. Superior Court, supra, at p. 1124, 86 Cal.Rptr.2d 623, 979 P.2d 982.) However, as noted above, the matter at issue in Sontag was whether an individual grand juror could be compelled to disclose how he had voted on an indictment. It was that matter that Sontag held was "regulated by statute," specifically, the Penal Code section relating to the oath of a grand juror. Quoted in full, Sontag stated: "No case has been called to our attention in which it has been held that a grand juror could be compelled to answer how he voted with respect to the finding of a particular indictment. [¶] In this State the whole matter is regulated by statute." *99 (Ex Parte Sontag, supra, at p. 527, 2 P. 402.)
It therefore appears that, although the matter of public disclosure of grand jury proceedings is governed by statute, there remains an interests of justice exception that may require limited disclosure of grand jury proceedings when, in the words of Ex Parte Sontag, it becomes necessary "for the purposes of public justice, or for the protection of private rights...." (Ex Parte. Sontag, supra, 64 Cal. at p. 526, 2 P. 402; see also People v. Superior Court (Mouchaourab) (2000) 78 Cal.App.4th 403, 436-437, 92 Cal.Rptr.2d 829 [recognizing the right of an indicted defendant to assert a due process right to discover nontestimonial portions of grand jury proceedings in connection with a motion to set aside a criminal indictment].)
Consequently, the matter must be remanded to permit the trial court to determine whether application of the three-part Douglas Oil test requires disclosure of the grand jury materials Goldstein seeks to prevent injustice.

3. Procedure to be followed by the trial court in the event it concludes Goldstein is not entitled to the grand jury materials under the interests of justice test.

If, after applying the Douglas Oil balancing test to the instant facts, the trial court concludes Goldstein is not entitled to any portion of the grand jury materials he seeks, there remains the matter of the trial court's obligation under Socialist Workers Party to advise the federal district court with jurisdiction over Goldstein's pending civil rights case of the need for continuing secrecy with respect to the undisclosed state grand jury materials.
Douglas Oil considered this procedural issue where both the court supervising the grand jury and the court presiding over the current matter were federal courts. Douglas Oil concluded the better practice was to have the court that supervised the grand jury make a written evaluation of the need for continued grand jury secrecy. Thereafter, the court presiding over the current judicial proceeding would evaluate the request for disclosure in light of the supervising court's assessment of the need for continued secrecy. (Douglas Oil, supra, 441 U.S. at pp. 230-231, 99 S.Ct. 1667.)
Socialist Workers Party adapted this procedure to the situation presented where plaintiffs in a federal civil rights action sought transcripts of a state grand jury. Socialist Workers Party noted the state court's rule of secrecy with respect to the grand jury materials had to accede to the federal claims of the plaintiffs, which would be determined under federal common law. Socialist Workers Party concluded that "when state grand jury proceedings are subject to disclosure [pursuant to application of Douglas Oil ], comity dictates that the federal courts defer action on any disclosure requests until the party seeking disclosure shows that the state supervisory court has considered his request and has ruled on the continuing need for secrecy." (Socialist Workers Party, supra, 619 F.2d at p. 644.) Socialist Workers Party explained, "This preliminary stage is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important state interest in secrecy is thoroughly considered." (Ibid.)
As can be seen from the forgoing, if the trial court determines upon remand that Goldstein is not entitled to the grand jury materials under state law, it nonetheless has an obligation to assess the need for continuing secrecy and prepare a written *100 evaluation of that need as an aid to the federal court's consideration of the issue. This obligation is especially significant where the trial court has denied access to the materials. Such a ruling suggests the trial court found a strong need to prevent lifting the veil of secrecy. In that circumstance, the trial court has a duty to ensure, to the extent it is able, that the federal court is advised of the specifics of the need for secrecy. Consequently, to the extent the trial court denies Goldstein's request on remand, it shall state in writing the need for continuing secrecy so that the federal court may consider this factor in determining whether Goldstein is entitled to access these materials under federal law.

DISPOSITION
The order to show cause is discharged. The writ petition is granted. The matter is remanded to the trial court with directions-to reconsider Goldstein's motion for access to the raw evidentiary materials presented to the 1988-1989 and 1989-1990 grand juries in their investigations of the misuse of jailhouse informants in light of the views expressed in this opinion. In the event the trial court again denies Goldstein's motion, it shall indicate in writing the reasons that necessitate continuing secrecy of the materials as to which discovery is denied in order to permit the federal court to apply the Douglas Oil test in Goldstein's federal civil rights case. The order granting Goldstein's writ petition is final immediately as to this court. (Cal. Rules of Court, rule 8.264(b)(3).) Goldstein shall recover his costs in this appellate proceeding.
We concur: CROSKEY and ALDRICH, JJ.
NOTES
[1] Goldstein asserts Wefald's statements regarding the organization and indexing of the grand jury materials are not hearsay in that she personally has accessed the material. Nonetheless, Goldstein has separately filed an application to admit the declaration of Douglas Dalton to avoid the hearsay problem in Wefald's declaration. In the declaration, Dalton states: "It was the intent of the Grand Jury that the underlying materials upon which the Report was based be made available to anyone affected by jailhouse informant abuses as may be necessary to pursue their remedies. This was a reason for the records to be preserved. At the conclusion of the Report, the Grand Jury specifically states that 'the materials developed by the Grand Jury during their investigation will be preserved under secure conditions.' G.J. Rpt. at 153. The materials were preserved ... so that they could be accessed in future litigation and/or court proceedings. The Grand Jury asked the District Attorney's Office to cooperate in providing access to the materials developed by the Grand Jury in its investigation. Id. at 152-3."

We deferred ruling on Goldstein's application pending submission of the matter for decision. As discussed more fully below, this case requires us to determine, as a matter of law, whether the trial court had authority to grant Goldstein's request for disclosure. Dalton's declaration is not relevant to that issue. Consequently, we deny Goldstein's request. Obviously, Goldstein is free to submit this declaration, and any other evidence at his disposal, to the trial court upon remand.
[2] Goldstein also filed an appeal from the denial of the motion to discover the grand jury materials. (B198860 filed May 11, 2007.) We address the merits of Goldstein's writ petition because it appears the issue presented is one of importance that should be resolved promptly. (See Phelan v. Superior Court (1950) 35 Cal.2d 363, 370, 217 P.2d 951.)
[3] Subsequent unspecified statutory references are to the Penal Code.
[4] As observed in McClatchy Newspapers, California law has authorized grand juries to perform three basic purposes: "to weigh criminal charges and determine whether indictments should be returned (§ 917); to weigh allegations of misconduct against public officials and determine whether to present formal accusations requesting their removal from office (§ 922; see Gov.Code, § 3060 et seq.); and to act as the public's `watchdog' by investigating and reporting upon the affairs of local government (e.g., §§ 919, 925 et seq.). Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California. [Citations.]" (McClatchy Newspapers, supra, 44 Cal.3d at p. 1170, 245 Cal.Rptr. 774, 751 P.2d 1329, fn. omitted.)